AMERICAN ICE CO. v. PORRECA.

(Circuit Court of Appeals, Third Circuit. April 2, 1914.)

No. 1816.

1. MASTER AND SERVANT (§ 121*)—DEATH OF SERVANT—GUARDING MACHINERY —STATUTES—FAILURE TO COMPLY—NEGLIGENCE.

Failure of a master to comply with Pa. Act May 2, 1905 (P. L. 355) § 11, requiring that machinery of every description shall be properly guarded, resulting in death of a servant, constitutes actionable negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

2. MASTER AND SERVANT (§ 121*)—DEATH OF SERVANT—"MACHINERY"—DUTY TO GUARD.

Where an ice cutting mechanism consisted of a saw and carriage in combination, and hardwood wedges were used to hold the ice plates steady and keep the ice from splitting unevenly, and these, in the process of sawing, were liable to be struck by the saw and thrown from under the unguarded rear of the carriage with great force across the place where it was a servant's duty to work, the carriage constituted "machinery of every description" within Pa. Act May 2, 1905 (P. L. 355) § 11, requiring that machinery of every description shall be properly guarded, so that a mere guarding of the saw did not show such a compliance with the statute, as a matter of law, as would preclude the master from liability for actionable negligence resulting in the death of an employé by being struck by one of such wedges, due to a failure to guard the carriage to protect from such flying wedges.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*

For other definitions, see Words and Phrases, vol. 5, pp. 4267–4269.]

3. MASTER AND SERVANT (§ 121*)—INJURY TO SERVANT—GUARDING MACHINERY—STATUTES.

Act Pa. May 2, 1905 (P. L. 355) § 11, requiring that machinery of every kind shall be properly guarded, is to be construed broadly, in accord with its purpose to prevent avoidable harm, and not grudgingly.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MASTER AND SERVANT (§ 121*)—INJURY TO SERVANT—MACHINERY GUARDS—
"PROPERLY GUARDED."

     Act Pa. May 2, 1905 (P. L. 355) § 11, requiring that machinery of every kind shall be "properly guarded," requires that machinery shall be effectively guarded in the light of the dangers to be anticipated.

     [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 228–231; Dec. Dig. § 121.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

Action by Camilla Porreca against the American Ice Company. Judgment for plaintiff, and defendant brings error. Affirmed. Certiorari refused by United States Supreme Court.

Frank R. Savidge, of Philadelphia, Pa., for plaintiff in error.

Thomas F. Gain and Alfred L. Cameron, both of Philadelphia, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. This action was brought in a state court by Camilla Porreca against the American Ice Company, to recover damages for alleged negligence of such defendant, which caused the death of her husband, Joseph Porreca, its employé. Thereupon the defendant, on the ground of diversity of citizenship, removed the case to the court below. The case was there tried, and resulted in a verdict for plaintiff. On entry of judgment thereon, defendant sued out this writ of error.

At the time of his death, Joseph Porreca was working as a day-laborer attendant upon an ice cutting saw machine in defendant's artificial ice factory. While engaged in sweeping up the slush ice thrown off by the cutting of the saw, he was struck and killed by a part of a hard wood wedge which was hit by the saw and thrown backwards. The man was found lying at some distance to one side of a line running directly back from the travel of the saw. Just where and how he was struck is not known, as the room was so full of fog or steam at the time that no one could see. In view, however, of proof by the sawyer that he felt the saw strike the wedge; that part of it was found where it was struck; that the other part was found lying by Porreca, there can be no doubt, and indeed it is not disputed, that the man was killed by the flying wedge, violently thrown backward by the saw. As pertinent to the question now before us, the negligence charged was that defendant omitted to comply with the requirement of section 11 of the Pennsylvania Factory Act of May 2, 1905, P. L. 355, viz., "all * * * saws, * * * and machinery of every description shall be properly guarded," in that it negligently failed—

"to provide and maintain upon or about the saw, carriage and turntable, above described, any proper, suitable or sufficient guard to prevent the said wedges or pieces thereof from being thrown away from said ice by the action of the saw and to prevent the said wedges or pieces thereof being thrown against and coming in contact with the said Joseph Porreca, or other workmen whose duties required them to work in proximity to the said turntables."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The proofs tended to show that the ice was artificially frozen in large plates some 10 to 12 inches thick, 12 by 18 feet in size, and weighing some five tons. These plates were raised by a crane and laid on a platform or turntable. The plates were then machine sawed into suitable cakes; 3 cuts being made the long way and 10 crosswise the plates. This sawing machine consisted of a frame or carriage on which was mounted an electrically propelled circular saw 36 inches in diameter, revolving at from 600 to 800 revolutions per minute. This carriage was mounted on tracks, and was directed by a sawyer who sat thereon. Half the saw was above, and the lower half, which entered the ice, was below the carriage frame. The edges of the ice plates were at times rounded or beveled, and in order to hold such plates steady and keep the ice from splitting unevenly, four wedges were driven under each of the 12-foot sides of the plates. These wedges were of hard wood about 3x4x6 inches. They were placed outside the intended cut of the saw. They were wet and slippery, and owing to the jar of the plate or machinery, they were at times dislodged and struck by the saw and thrown backward. Giordano, one of the three men who worked in this room, testified that the wedges were thrown out three or four times; that he was afraid of them, that the men had themselves stopped using them for two weeks, but were ordered to continue their use because too much ice was broken without them. In that regard the proof was that about one-fifth of the ice was cracked off and lost when wedges were not used. Rossi, the third man in the room, testified the reason they did not use the wedges during these two weeks was "because so many wedges got cut off by the saw; we could not use any more." He also testified to seeing them thrown out by the saw two or three times. Landis, a witness for defendant, testified there was no "screen or device of any character around that table to prevent those wedges, when hit by the saw, from flying away," and English, another witness, said that "if a wedge is encountered in the path of the saw, there is nothing to prevent that wedge from being thrown backward away from the ice." Kirk, another witness for defendant, testified that when the saw is entering the ice—

"there is absolutely nothing under those I-beams to prevent a wedge from going in a straight line from the ice when it is encountered under the I-beams. That is a clear space of 14 or 15 inches."

The proof tended to show that when the accident occurred, the room was full of steam, so that one could not see anything; that one of Porreca's duties was to clear away the slush as the saw cut it and threw it back, and Giordano, in answer to the question as to what Porreca was doing just before the accident, said, "he had a shovel when I started to cut the ice, to start to clean the snow"; that he was from six to nine feet away from the saw.

"I started the power on the saw to cut the ice, and before I cut on the ice I heard the saw strike the wedge. I stopped the saw right away, and took the wedge out of the saw, and Mr. Dominick Rossi, they were back of me, about 10 feet back of me, he says, 'Tony, what happened?' I says, 'The saw caught a wedge.' Then he came right over. I looked around, and he was following me, right after me. When we went near the Washington avenue wall, on the Washington avenue side, we saw Mr. Joe Porreca was lying down on

the floor, and a piece of wedge right near his head, a big heavy piece, and the small piece right under the saw."

At the close of the testimony the court refused defendant's request for binding instructions and affirmed a point of the plaintiff's as follows:

"(3) The Pennsylvania Act of Assembly, dated May 3, 1905, P. L. 355, section 11, provides in part as follows:

" 'All vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws, grindstones, emery wheels, fly-wheels, and machinery of every description shall be properly guarded.'

"Properly guarded means effectively guarded in the light of the danger to be anticipated. If you believe from the evidence that there was danger of contact between the saw and the wedges, and that there was no guard provided either about the saw or around the cutting table to protect the workmen whose duties required them to be in that vicinity, then you would be justified in concluding that the defendant failed to comply with its statutory duty."

Its action in so doing is, inter alia, here assigned for error. In substance, therefore, the case turns on whether, under the proofs, the court erred in submitting to the jury to find the defendant guilty of negligence by reason of noncompliance with the Pennsylvania Factory Act quoted.

[1, 2] That failure on the part of the defendant to comply with the requirements of that statute would constitute negligence is clear. It is alleged, however, that the statute has no application since the proofs show that a proper hood was placed over the saw. This contention, however, loses sight of the fact that the case involves a much broader question. It is true the saw itself was properly guarded so far as danger arose from contact with it. Thus its upper half, where contact with it was alone possible, was properly hooded, and its lower half was necessarily left unhooded because it had to be left free to cut the ice, and moreover no one could come in contact with it by reason of the surrounding carriage frame and its location beneath such frame. But this contention loses sight of the statute, the declaration, and the proofs. The statute, as we have quoted above, makes it the duty of an employer to properly guard, not only the enumerated elements of saws, planers, etc., but uses the broad, inclusive phrase "and machinery of every description shall be properly guarded." This was the view of the pleader, who alleged, as we have seen, that the defendant negligently failed—

"to provide and maintain upon or about the saw carriage and turntable, above described (see clause 3 of amended statement) any proper, suitable, or sufficient guard to prevent the said wedges or pieces thereof from being thrown away from the said ice by the action of the saw, and to prevent the said wedges or pieces thereof being thrown against and coming in contact with the said Joseph Porreca or other workmen whose duties required them to work in proximity to the said turntable."

While the proofs showed that the saw as a saw was properly hooded and guarded, and failed to show anything in reference to the platform or turntable, they did show the carriage was not guarded so as to prevent wedges struck by the saw from flying out from beneath the carriage, as testified to by defendant's witnesses quoted above. Under these pleadings and proofs, we think the court could not take the case

from the jury, for it did not depend on the guarding of the saw alone. The saw, the motor, the actuating mechanism, were all parts of the movable carriage. They united to make the carriage something that properly came within the broad statutory term "machinery of every description," which it was the purpose of the statute to properly guard. The saw was but an incident of the carriage, and properly guarding the saw against contact was not a guarding of the carriage as a whole.

[3] Nor is this humane and danger-eliminating statute to be grudgingly construed. Its obvious purpose was to properly guard machinery of every description so as to prevent preventable harm. The word "guard" in its derivative sense means to be on the watch, and in its common use to protect from danger.

[4] Bearing in mind, then, the avowed purpose of the statute "to provide for the safety of all employés in industrial establishments," it would seem clear that the term "properly guarded" used therein means effectively guarded in the light of the dangers to be anticipated. In Hindle v. Biertwhistle, 1 Queen's Bench Division, 192, the English Factory Act, which provided "all dangerous parts of the machinery" in a factory shall be securely fenced or otherwise rendered safe, was involved. It was, in substance, there held that the obligation to fence was not confined to machinery which was dangerous in itself in the ordinary course of careful working, but that shuttles of a weaving loom, though not in themselves defective, were "dangerous parts of machinery" if, owing to the negligence of the weaver, defect in the yarn, or from some foreign substance getting in the race, such shuttles were likely to fly out of the race with any degree of frequency. It was there said:

> "The learned recorder has supplied us with the keynote of his judgment in one sentence, in which he says that 'the manufacturer is only responsible for machinery which is in itself dangerous in the ordinary course of lawful working.' He seems to think that no machinery can be said to be dangerous unless it is dangerous in itself, however carefully worked. I entirely disagree with such an interpretation, and think it would limit most materially a very beneficial act of Parliament. It seems to me that machinery or parts of machinery, is and are dangerous if in the ordinary course of human affairs danger may be reasonably anticipated from the use of them without precaution."

In this case we have the factors of heavy hard wood wedges, occasionally struck by a saw, revolving at a very high rate of speed, and liable to fly across the place where a workman's duty brought him. Under such circumstances, we cannot, as a matter of law, say that the carriage was properly guarded, when there was no guard or barrier save chance to protect the man doing his work from being struck by a wedge flying out from under the unguarded rear of such carriage. Such was the view of the trial judge, who in submitting this phase of the case to the jury said:

> "Now, coming to the statutory duty imposed on the defendant; that is, a duty to properly guard the saw. There does not seem to me to be any dispute as to the extent to which the saw was guarded. The top part of the saw, where it was above the ice, was covered with a sheet iron hood, and it seems to have been properly guarded in that respect, so far as any one coming in contact with it is concerned. So that the question here would be as to whether it was properly guarded to prevent anything flying out, whether there was

any ordinary reason for anything such as happened here, a wedge flying out, and whether there was a substantial compliance with the statute with the guard that was there to prevent any such risk as might be reasonably expected. The defendant contends that it has done its duty in supplying the guard that was there. The question is, as I have stated, and it is for you to determine, whether there was a risk there which the master or any one having to do with the machinery could reasonably expect, and whether there was a substantial compliance with the act providing for a guard by the guard that was there. In other words, would the guard there prevent any foreign substance from flying out and striking anybody, and, if it was not, was it an occurrence which was reasonably to be expected in a plant of this sort?"

These questions having been submitted to and determined by the jury adversely to the defendant, we find no error to warrant our reversing the judgment entered on the verdict.