## FOSTER v. E. I. DU PONT DE NEMOURS & CO.

(Circuit Court of Appeals, Fourth Circuit.   May 1, 1923.)

No. 2068.

**1. Master and servant ⬅121(1)—Statute requiring "vats" to be "properly guarded" held to extend to guarding vents.**

The requirement of Code Va. 1919, § 1830, that all "vats" shall be properly guarded, extends to guarding vents, troughs, or other appurtenances used in filling and emptying vats filled with hot water or acid; the term "properly guarded" meaning effectively guarded, in view of any danger to be anticipated.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Properly Guard; Vat.]

**2. Master and servant ⬅286(5)—Negligence in guarding vat held for jury.**

In action for injuries to servant from a spurt of boiling water from a vat, occasioned by a plug being forced out by the pressure of the water, whether it was practicable to guard the vat, within the meaning of Code Va. 1919, § 1830, *held* for the jury.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; D. Lawrence Groner, Judge.

Action by James C. Foster against E. I. du Pont de Nemours & Company. Judgment for defendant, and plaintiff brings error. Reversed.

David H. Leake, of Richmond, Va. (John L. Lee, of Lynchburg, Va., H. G. Buchanan, Scott & Buchanan, and D. H. & Walter Leake, all of Richmond, Va., on the brief), for plaintiff in error.

Robert H. Talley, of Richmond, Va., and J. Gordon Bohannan, of Petersburg, Va. (Plummer, Zimmer, Bohannan & Syme, of Petersburg, Va., on the brief), for defendant in error.

Before WOODS and ROSE, Circuit Judges, and McCLINTIC, District Judge.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WOODS, Circuit Judge.  Plaintiff, James C. Foster, was injured on November 3, 1916, by a spurt of boiling water while employed as "change man" in "tub house No. 12," used in the manufacture of gun cotton in the munitions plant of defendant, E. I. du Pont de Nemours & Co., at Hopewell, Va.  The tub house contained 128 covered wooden tubs in rows; each tub being 6 feet high and 10 feet 6 inches internal diameter.  Cotton, after being treated with acid, was several times boiled in these tubs.  For the purpose of draining the tubs were provided with a perforated false bottom about 6 inches above the real bottom, which held the cotton while allowing the water to pass.  The water was heated by means of steam pipes resting in the bottom of the tub.  For the escape of the water from the tub after each boiling, a hole about 2½ inches in diameter was provided in each tub between the false bottom and the real bottom.  During the boiling process this hole was stopped by a tapering wooden plug 10 to 12 inches long, driven in by the plaintiff or other employee with another plug or a short mallet. When the time came to let the hot water escape, the plug was knocked out by the plaintiff or some other employee.  From this vent the water flowed through a trough, about 12 inches in depth and width and about 24 inches in length, into a long trough, extending through the tub house, which carried it off.

The evidence tended to show that the plugs were not infrequently forced out by the pressure of the water, and that if they were driven in tight enough to prevent this danger there was great difficulty in knocking them out.  When a plug was forced out by the pressure of the water, there was a spurt of hot water from the open hole.  While the plaintiff was in the act of driving a plug into the hole of a tub that had been drained, the plug in a tub on the opposite side of the long trough was forced out by the pressure of the water, and the hot water and steam spurted across and injured him.

The plaintiff abandoned his count alleging violation by the defendant of duties imposed on it by the common law, and relied on the alleged failure to comply with the Virginia Factory Act requiring vats to be properly guarded, in that defendant did not provide means to prevent the blowing out of the plugs, and did not so construct the vent trough that the boiling water would not by a sudden spurt injure employees as the plaintiff was injured.  The statute provides:

"The owner or person in charge of a factory, shop, or manufacturing establishment where machinery is used, shall provide, in the discretion of the commissioner of labor, belt shifters or other mechanical contrivances for the purpose of throwing on or off belts on pulleys.  Whenever practicable, all machinery shall be provided with loose pulleys.  All vats, elevators, saws, planers, cogs, gearing, belting, shafting, set screws, shapers and corner machines, shall be properly guarded. * * *" Virginia Code 1919, § 1830.

The District Judge instructed the jury to find a verdict for defendant, holding the statutory requirement that vats should be properly guarded does not extend to guarding vents, troughs, or other appurtenances used in filling and emptying vats.

[1] The statute should have a construction broad enough to meet the legislative purpose in view.  Obviously one of the chief dangers in the use of vats or tubs frequently filled with hot water or acid and

then emptied from the bottom through a hole into a tube or trough is that the pressure from above may force the water out with such violence as to strike and injure employees working around the vats. This is a danger immediately incident to the operation of the vat, and is as clearly within the provision of the statute as guarding the vat by cover. Properly guarded means effectively guarded in view of any danger to be anticipated in the operation of the vat. E. I. du Pont de Nemours & Co. v. Brisco (4th Cir.) 254 Fed. 962, 166 C. C. A. 324; American Ice Co. v. Porreca, 213 Fed. 185, 129 C. C. A. 529.

[2] The court, therefore, erred in directing a verdict for the defendant, and in refusing to charge the jury that if they believed that—

"said hot water, steam, and acid would not have spurted, projected, and been thrown upon the plaintiff, if said vats or tubs had been properly guarded, then the jury must find for the plaintiff and assess his damages as hereinafter directed, unless the jury believe from the evidence that the plaintiff was guilty of contributory negligence."

The defendant had made no effort to construct the short trough by which the vat was emptied, or to control the flow of water through the hole in the vat by a valve or other safe means, so as to prevent such injuries to employees as that suffered by plaintiff. But there was some evidence tending to show that such a construction was not practicable. Therefore the plaintiff was not entitled to an instruction to find a verdict in his favor.

Reversed.