Syllabus.

Staunton.

CLINCHFIELD COAL CORPORATION V. EDGAR HAWKINS.

September 22, 1921.

Absent, Burks, J.

1. MINES AND MINERALS—*Master and Servant—Injury from Falling Drawslate—Section 1863. Code of 1919 as Defense.*—Section 1863 of the Code of 1919, providing that no miner shall continue to work in any working place known by him to be unsafe, or which might have been so known to him in the exercise of ordinary care, would bar recovery by a miner for an injury caused by falling drawslate, if the miner was of sufficient experience to have known, or to have been able to ascertain by the exercise of ordinary care, that the roof was unsafe.

2. MINES AND MINERALS—*Master and Servant—Injury from Falling Drawslate—Section 1840, Code of 1919.*—Section 1840 of the Code of 1919 imposes two non-assignable duties upon employers engaged in mining operations—first, to instruct every employee, whether experienced or not, as to the *unusual and extraordinary* dangers incident to his work in the mine which may be known to or could reasonably be foreseen by the mine foreman or assistant mine foreman, and, second, to see that every inexperienced employee works with a man of experience until he has had an opportunity to become familiar with the *ordinary* dangers incident to the work.

3. MINES AND MINERALS—*Master and Servant—Injury From Falling Drawslate—Section 1840, Code of 1919—Purpose of the Section.*—The requirement of the section (section 1840, Code of 1919) as to the instruction of employees upon unusual and extraordinary dangers is merely declaratory of the common law, and the requirement that the employer should see that an inexperienced employee should work with a man of experience was intended to provide a practical and effective method for giving to inexperienced miners the instructions which at common law it was the duty of the employer to provide.

4. MASTER AND SERVANT—*Mines and Minerals—Injury From Falling Drawslate.*—An injury to a miner from falling drawslate,

falling some time after a blast, is an accident which any experienced miner would have been bound to anticipate and protect himself against, and is not an unusual or extraordinary danger incident to a miner's work within section 1840, Code of 1919.

5. MASTER AND SERVANT—*Mines and Minerals—Inexperienced Miner Within Section 1840, Code of 1919.*—A jury might reasonably find that a miner, a young man twenty-one years of age, whose previous experience was probably that of a farm laborer and who had been employed as a miner for about two weeks before he was hurt, was an "inexperienced person" within section 1840, Code of 1919.

6. MASTER AND SERVANT—*Mines and Minerals—Ordinary and Extraordinary Risks.*—Underground mining is in itself a hazardous business and the ordinary and usual risks and dangers incident thereto may be quite extraordinary and unusual to one not experienced in that line of work. Thus, certain very common roof conditions in mines are treacherous and dangerous, and yet an inexperienced miner might not know how to safely change such conditions.

7. MASTER AND SERVANT—*Mines and Minerals—Inexperienced Miners—Section 1840, Code of 1919.*—Section 1840, Code of 1919, provides a specific practical method with reference to inexperienced miners designed to effectively acquaint them with the usual and ordinary dangers found in a mine by requiring that they shall work under the direction of a mine foreman or his assistant, or some other experienced miner, until he has had reasonable opportunity to become familiar with the ordinary dangers incident to his work. The plain meaning of this requirement is that the inexperienced miner shall receive such direction as will insure either a familiarity with the dangers of the work or a reasonable opportunity to acquire such familiarity.

8. MASTER AND SERVANT—*Mines and Minerals—Inexperienced Miners—Section 1840, Code of 1919.*—Notwithstanding that an inexperienced miner, injured by a fall of stone from the roof of a mine, may have worked under the direction of a competent foreman and with an experienced miner, section 1840, Code of 1919, is not complied with, neither of these men, and no other co-employee can be said to have given the plaintiff any demonstrations, directions or instructions as to the danger of the roof, or the means of securing himself against such danger..

9. MASTER AND SERVANT—*Mines and Minerals—Inexperienced Miners—Section 1840, Code of 1919—Questions of Law and Fact.*—

The manifest purpose of section 1840, Code of 1919, is not complied with by merely furnishing inexperienced miners with competent foremen and experienced co-workmen. Its purpose was to impose upon the employer the legal duty of giving inexperienced persons such immediate personal "direction" as to afford them "a reasonable opportunity to become familiar with the ordinary dangers incident to the work." And if there be a fair doubt under the evidence as to whether this duty has been performed, the question must be settled by the jury.

10. MASTER AND SERVANT—*Mines and Minerals—Setting Props in Mine—Section 1867 of the Code of 1919.*—While section 1867 of the Code of 1919 provides for the placing of props by miners working in a mine, to the end that the working places be made safe, yet the mining law must be read as a whole, and this provision has no effect upon the right of a miner to recover if he did not know and had not had a reasonable opportunity to understand when and how to render his place of work safe by the use of props.

11. MASTER AND SERVANT—*Mines and Minerals—Rules of Employer.*—A rule of a mining company provided that miners were not to go to work, especially after a shot, until sure the roof was safe. Obviously all that this rule requires is that the miner must use due diligence to see that he does not work under an unsafe roof, and due diligence in every case depends upon the attending circumstances, and such rule does not relieve the employer of the duty of seeing that inexperienced employees were given the opportunity of becoming acquainted with the dangers of the work.

12. MASTER AND SERVANT—*Rules—Duty of Employee.*—The employee is under as imperative obligation to obey reasonable rules as the employer is to make them. But the employee must have an adequate opportunity to understand the purpose and meaning of the rules before he is bound by them.

13. MASTER AND SERVANT—*Assumption of Risk.*—The doctrine of assumed risk does not apply to the breaches of the statutory duties of the master.

14.—MINES AND MINERALS—*Master and Servant—Assumption of Risk—Case at Bar.*—In the instant case plaintiff, an inexperienced miner, was injured by fall of drawslate from the roof of the mine.

    *Held:* That from the facts of the case it could not be said that under the common law doctrine unaffected by statute the danger was so patent and obvious as to bar the plaintiff's recovery.

15. MASTER AND SERVANT—*Mines and Minerals—Fellow Servants*

—*Section 1840, Code of 1919.*—In an action by an inexperienced miner for an injury from falling rock, it was claimed that the experienced miner working with plaintiff was a fellow servant, and if guilty of negligence in not examining the roof and propping it, or taking it down, plaintiff assumed the risk of that negligence, but section 1840, **Code of** 1919, imposed upon defendant the non-assignable duty of seeing that plaintiff, as an inexperienced miner, worked under the direction of a foreman, assistant foreman or experienced miner. The jury might have found under the evidence that plaintiff was an inexperienced miner, and that he did not work under such direction as the statute plainly contemplated. And to this situation the fellow-servant doctrine therefore would not apply.

Error to a judgment of the Circuit Court of Dickenson county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Morison, Morison & Robertson, Jno. W. Flanagan, Jr.,* and *W. H. Rouse,* for the plaintiff in error.

*A. A. Skeen* and *J. C. Smith,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This action was brought by Edgar Hawkins against the Clinchfield Coal Corporation to recover damages for personal injuries received by him when he was caught under a piece of falling slate in a mine owned and operated by that corporation. At the trial of the case the defendant interposed a demurrer to the evidence which the court overruled, and a judgment followed in favor of the plaintiff for the amount of the damages fixed by the jury in their conditional verdict. Thereupon the defendant obtained this writ of error.

There were three counts in the declaration, but the charge upon which the plaintiff's recovery depends is that he was an inexperienced miner, and that the defendant negligently failed to properly instruct him as to the dangers incident to the work.

The plaintiff was a bright, intelligent young man nearly twenty-one years of age, but prior to entering the service of the defendant as a miner his principal experience at manual labor had been obtained on a farm. He had, however, done some work cutting timber in the woods, and had also been employed a short time on the railroad grade outside of but near the mine in which he was subsequently injured. While engaged in this last named work he boarded at a house where some of the miners also boarded and heard them talk in a general way about their work.

He had been employed by the defendant as a miner for about two weeks before he was hurt, and during that period had actually worked in the mine eight or nine days. This was his first and only experience in that capacity, and he was not instructed by anyone as to the dangers attending the work. This is his unqualified statement on the subject, and while there are some general and rather indefinite statements to the contrary by the witness Bob Dickenson, whose evidence is hereinafter more fully considered, the plaintiff's statement on the demurrer to the evidence must prevail.

He was put to work with Bob Dickenson, an experienced miner who seems to have assigned his work to him; and it appears that two other miners of experience worked with him during a part of the time. His duty was to load coal into the mine cars, and so far as the record discloses or indicates he was never, at any time while in the mines, directed to do any other work. On the morning of the accident he went into a place in the mine known as room 15 with Dickenson, who "shot the coal" for him by placing a charge of dynamite in holes drilled on top of the coal

seam next to the roof of the mine so as to spring the coal loose from the top. The plaintiff stood by and saw Dickenson prepare the shot, and they both withdrew to a place of safety until the shot went off. Dickenson did not go back to investigate the result of the explosion, and the plaintiff, to whom Dickenson had assigned the task of loading into the mine cars the coal thus shot down, returned and had been working an hour or two when a piece of "drawslate" fell from the roof and injured him. The plaintiff very frankly admits that he did not look at the roof, but says he would not have been able to tell by looking whether it was going to fall or not.

The remaining facts, so far as material to a decision of the case, will appear in the discussion of the various grounds which the defendant urges upon us in support of its demurrer to the evidence.

[1] It is insisted that any recovery by the plaintiff is barred because he violated section 1863 of the Code of 1919, a part of the Virginia mining statute, which says that "no miner shall continue to work in any working place known by him to be unsafe, or which might have been so known to him in the exercise of ordinary care."

This point would be conclusive of the case if we were able to say as a matter of law upon the evidence certified that the plaintiff was a miner of sufficient experience to have known, or to have been able to ascertain by the exercise of ordinary care, that the roof was unsafe. The case depends, in our opinion, entirely upon whether he had been sufficiently instructed and whether he was an "inexperienced person" within the meaning of section 1840 of the Code. That section, so far as material here, is as follows:

[2-3] "It shall be the duty of the mine foreman or assistant mine foreman of every coal mine in this State to see that every person employed to work in such mine shall, before beginning work therein, be instructed as to any unusual or

extraordinary dangers incident to his work in such mine, which may be known to or could reasonably be foreseen by the mine foreman or assistant mine foreman * * *.

"Every inexperienced person so employed shall work under the direction of the mine foreman, his assistant, or such other experienced worker as may be designated by the mine foreman or assistant until he has had reasonable opportunity to become familiar with the ordinary dangers incident to his work."

The foregoing section of the mining law imposes two non-assignable duties upon employers engaged in mining operations—first, to instruct every employee, whether experienced or not, as to the *unusual and extraordinary* dangers incident to his work in the mine which may be known to or could reasonably be foreseen by the mine foreman or assistant mine foreman, and, second, to see that every inexperienced employee works with a man of experience until he has had an opportunity to become familiar with the *ordinary* dangers incident to the work. The former requirement of the statute is merely declaratory of the common law, and the latter was intended by the lawmakers to provide a practical and effective method for giving to inexperienced miners the instructions which at common law it was the duty of the employer to provide.

[4] If, as contended by counsel for defendant, the danger that drawslate would under the circumstances fall on the plaintiff was not "an unusual or extraordinary danger," then the defendant did not violate the first branch of section 1840 above quoted, and we may go further and say that while the difference between "drawslate" and the sandstone or permanent roof is not very fully brought out in the record, we think it sufficiently appears that the accident which happened to the plaintiff was one which any experienced miner would have as a matter of law been bound to anticipate and protect himself against.

[5] Upon the other branch of the statute, however, we are of opinion that, on the evidence demurred to, a jury might reasonably have found that the plaintiff was an "inexperienced person," and as such entitled to the protection plainly intended by the statute for such person. Underground mining is in itself a hazardous business and the ordinary and usual risks and dangers incident thereto may be quite extraordinary and unusual to one not experienced in that line of work. For example, it is stated in the petition upon which this writ of error was granted that "the drawslate is a shaly, loosely formed layer of slate lying on top of the coal seam immediately under the sandstone or permanent slate roof, and always must be taken down." If this statement be amplified by saying that drawslate must always be either taken down or propped, it embodies a proposition which is doubtless familiar to all experienced miners, and which, furthermore, may fairly be implied from the evidence in this case as a whole, and yet that proposition is by no means a matter of common knowledge to men of even very wide experience in other fields of labor. It seems very clear from the record before us that certain very common roof conditions in the mines are treacherous and dangerous, and yet an inexperienced miner might not know how to safely change all such conditions. In so far as the conditions are usual and ordinarily found in mines, the statute requires no more than the common law did with reference to instructing experienced men; but as to inexperienced miners the statute provides a specific practical method designed to effectively acquaint them with such dangers by requiring that they shall work under the direction of a mine foreman or his assistant, or such other experienced worker as may be designated by the mine foreman or assistant, until they have "had reasonable opportunity to become familiar with the ordinary dangers incident to the work." The plain meaning of this requirement is that the

inexperienced miner shall receive such direction as will insure either a familiarity with the dangers of the work or a reasonable opportunity to acquire such familiarity. Now, it is contended in this case that the plaintiff did work under the direction of a competent foreman who visited the place every day and an experienced miner who assigned his tasks, and in a sense this contention is true. The foreman was a competent man and did visit the plant every day, and Dickenson, the miner with and under whom the plaintiff worked, was a man of long practical experience in mining operations. But the difficulty with the defendant's case is that neither of these men, and no **other co-employee can,** upon the demurrer to the evidence, be said to have given the plaintiff any demonstrations, directions or instructions as to the danger of the roof, or the means of securing himself against such danger. He had never worked in a mine before, and we cannot say, from the proof before us, that his eight or nine days' experience in this mine had unquestionably afforded him a sufficient opportunity, from his observation of the work by others, to understand and guard against the danger. The manifest purpose of the statute, as we construe it, is not complied with by merely furnishing inexperienced miners with competent foremen and experienced co-workmen. Its purpose was to impose upon the employer the legal duty of giving inexperienced persons such immediate personal "direction" as to afford them "a reasonable opportunity to become familiar with the ordinary dangers incident to the work." And if there be a fair doubt under the evidence as to whether this duty has been performed, the question must be settled by the jury.

It is true that the plaintiff himself, on being asked by his counsel the following question, gave the following answer:

"Q. When the coal is removed, do they do anything to keep the rock from falling?

"A. Yes, they are supposed to take it down or prop it up, one."

And it is also true that on cross-examination he was asked: "You know what drawslate is, don't you?" and answered, "Yes, I think so."

But it must be remembered that he was testifying long after he received the injury, and after it is entirely reasonable to suppose that the circumstances and cause of the accident had been the subject of much discussion by others with him or in his presence, and his answers at that time do not necessarily mean that he knew before he was injured what drawslate was or how to deal with it. It is quite easy to see from reading this record that some mine roofs require props and some do not; that drawslate is dangerous and treacherous, and that experienced miners have no trouble in distinguishing between drawslate and permanent roof; but it is by no means clear than an inexperienced man would possess such knowledge, or that the plaintiff had acquired it prior to the accident. The miner, Bob Dickenson, says he regarded him as an inexperienced man, and treated him as such, and the plaintiff testified that he had nothing to do with shooting the coal or setting the props, and that he had never been given any instructions in regard thereto by anybody. And while it is true that Dickenson, after saying that the plaintiff had nothing to do with shooting the coal or setting the props, added that "in case the slate had to come down he (plaintiff) was supposed to set a jack-prop"—a jack prop being the first or temporary prop to secure the slate while the coal last shot down and immediately over it is being removed—the force of this statement is lost when taken with the testimony as a whole. Dickenson does claim in general terms that he cautioned the men, including the plaintiff, about the drawslate, but he admits that he said nothing to him about set-

ting a jack prop after the coal had been shot, and as we have seen, the plaintiff testified that he had received no instructions whatever with respect to the roof, and would not have known by looking at it whether or not it was liable to fall.

We conclude, therefore, that the plaintiff cannot be denied a recovery as a matter of law on the ground of having violated section 1863 of the mining law as found in the Code of 1919.

[10] And for like reasons we reach a like conclusion as to the contention that plaintiff violated section 1867 of the Code. That section, after providing for daily visits by the mine foreman or assistant foreman, and for direction as to securing their working place in the mine by props, directs that such props "shall be placed and used by the miners working therein, as in this chapter provided, to the end that such working places be made safe." The mining law must be read as a whole, and the section here under consideration of course has no effect upon the right of the plaintiff to recover if he did not know and had not had a reasonable opportunity to understand when and how to render his place safe by the use of props.

[11-12] And, for similar reasons, we are unable to sustain the defense based upon the alleged violation by the plaintiff of the rule that miners were not to go to work, especially after a shot, until sure the roof was safe. The defendant had complied with section 1878 of the Code requiring the adoption and posting of rules for the government and operation of the mine, and under the terms of that section the plaintiff was charged with notice of such rules. Among them was a rule which said: "Don't start to work, especially after a shot, until you are sure your roof is safe." Obviously all that this rule requires is that the miner must use due diligence to see that he does not work under an unsafe roof, and due diligence in every case depends upon

the attending circumstances. The plaintiff admits that he did not look at the roof at all after the shot was fired, but states without qualification that he would not, with his limited knowledge and experience, have been able to tell whether it was liable to fall. There is nothing in the evidence to show that the condition of the roof over him was glaringly dangerous. He was permitted by Dickenson to go back after the shot with no instructions except to load the coal into cars. As a matter of fact the roof remained in place for an hour or so before it fell. The ruling purpose of the statute, which is the safety and protection of the miners, would be to a large extent frustrated if the employer could, by making and publishing such a rule as is here relied upon, relieve himself of the duty of seeing that inexperienced employees were given the opportunity of becoming acquainted with the dangers of the work. It is of course well settled law that the employee is under as imperative obligation to obey reasonable rules as the employer is to make them. *Shumaker's Administrator* v. *Atlantic Coast Line R. Co.*, 125 Va. 393, 401, 99 S. E. 739, and cases cited. But the employee must have an adequate opportunity to understand the purpose and meaning of the rules before he is bound by them. Under the facts of this case, as they are presented by the demurrer to the evidence, we are unable to say that a jury must have found that the plaintiff negligently violated the rule in question.

[13-14] The doctrine of assumed risk cannot avail the defendant. It does not apply as to breaches of the statutory duties of the master (*Carter Coal Co.* v. *Bates*, 127 Va. 586, 105 S. E. 76) ; and, independent of that proposition, we are not prepared to hold as a matter of law from the facts of the case that under the common law doctrine unaffected by statute the danger was so patent and obvious as to bar the plaintiff's recovery.

[15] It is claimed that Dickenson, who was neither a foreman nor assistant foreman, was a fellow-servant with the plaintiff, and that if he was guilty of any negligence in not examining the roof and propping or taking it down, the risk of that negligence was assumed by the plaintiff.   But it must be remembered that if the plaintiff was an inexperienced miner, the statute imposed upon the defendant the non-assignable duty of seeing that he worked under such direction of a foreman, assistant foreman or experienced miner as to give him a reasonable opportunity to become familiar with the dangers incident to the work.   Under the evidence the jury might have found as a fact that he was an inexperienced miner, and that he did not work under such direction as the statute plainly contemplated.   The fellow-servant doctrine does not apply to such a situation.

We do not mean to say that the case is plainly one for a recovery, but merely that in our opinion reasonable men might fairly differ upon what we have endeavored to point out as being the controlling facts, and that, therefore, the court was right in holding for the plaintiff upon the demurrer to the evidence.

It may be added that the case of *Addington, Adm'r,* v. *Guests River Coal Co., ante,* p. 584, 108 S. E. 695, decided today, is clearly distinguishable from this case, for the reason that in the former the plaintiff's decedent had, as shown by the evidence therein fully recited, worked in and around the mines to such an extent as to have necessarily become entirely familiar with the nature of drawslate and the danger of working under it without props; and, furthermore, had actual knowledge of the particular danger which resulted in his death.

*Affirmed.*