# Staunton.

## W. L. EDWARDS, ADMR., ETC., v. LAUREL BRANCH COAL COMPANY.

### September 21, 1922.

1. APPEAL AND ERROR—*Assignment of Error—Matter not Appearing from the Record.*—An assignment of error that the trial court refused the plaintiff's motion to require the defendant to make more specific its grounds of defense will not be considered on appeal where it does not appear from the record that any such motion was ever made by counsel or acted upon by the court.

2. CONTRIBUTORY NEGLIGENCE—*Grounds of Defense—Pleading Contributory Negligence—Plea Held Sufficiently Specific.*—In an action against a mine owner to recover for the death of a miner, defendant was required, on motion of the plaintiff, to file grounds of defense, and among them was a so-called plea of contributory negligence. It was objected to this so-called plea that it was not sufficiently specific to meet the requirement of the statute which requires contributory negligence to be specifically pleaded.

   *Held:* That there was no merit in this objection, as a mere reading of the specifications of plaintiff's negligence shows that they met any but the most hypercritical test in giving the plaintiff notice of the contributory negligence relied on by the defendant.

3. CONTRIBUTORY NEGLIGENCE—*Pleading Contributory Negligence by Defendant—Admission of Primary Negligence.*—In an action against a mine owner to recover for the death of a miner, defendant was required, on motion of the plaintiff, to file grounds of defense, and among them was a so-called plea of contributory negligence. It was objected to this so-called plea that it failed to show the defendant's primary negligence.

   *Held:* That the statute (Code of 1919, sec. 6092) providing that contributory negligence must be pleaded if relied upon was not intended to compel a confession of the defendant's primary negligence as a condition precedent to reliance upon the plaintiff's contributory negligence.

4. CONTRIBUTORY NEGLIGENCE—*Defendant's Right to Rely on the Want of Primary Negligence and also on Contributory Negligence of Plaintiff—Pleading.*—While it is true that the question of contributory negligence cannot arise until the negligence of the defendant has been established, yet a defendant may, at one and the same time,

claim that the plaintiff has no right to recover because he has failed to prove negligence on the part of the defendant, and, in the alternative, that even if the defendant was guilty of negligence, the plaintiff cannot recover because his own wrongful conduct efficiently contributed to the injury. The only purpose of the statute (Code of 1919, section 6092) was to require the defense of contributory negligence to be set out in advance of the trial in such way as to give the plaintiff reasonable notice of the character of proof which it would have to meet and overcome in combating such defense.

5. NEW TRIALS—*Verdict Contrary to the Law and the Evidence.*—Where a case depends upon the weight and credibility of testimony, and the jury evidently credited the evidence of the defendant, and in that view of the case a verdict for defendant was clearly in accord not only with the evidence but with the law, the verdict cannot be set aside as contrary to the law and the evidence.

6. MINES AND MINERALS—*Master and Servant—Instructions—Duty of Defendant Towards Inexperienced Miner—Defendant's Knowledge of Inexperience—Section 1840, Code of 1919.*—In an action against a mine owner for the death of a miner, plaintiff asked the trial court to instruct that in case deceased was an inexperienced miner it was the duty of defendant to only allow him to work under the direction of the mine foreman, the assistant foreman, or other experienced miner. The court modified this instruction by inserting that such was the duty of the defendant "if it knew, or could have known by inquiry of his inexperience."

Held: No error, especially as it was not denied that the miner was inexperienced, and that defendant either knew that fact or could have easily ascertained it.

7. MINES AND MINERALS—*Inexperienced Miner—Duty of Mine Owner—Section 1840, Code of 1919.*—Section 1840 of the Code of 1919, providing that inexperienced miners shall only be allowed to work under the direction of the mine foreman or other experienced miner merely changed the common law with respect to instructing an inexperienced miner so as to provide a practicable and effective method of imparting the necessary instruction.

8. MASTER AND SERVANT—*Presumption of Servant's Competency and Experience.*—The common law rule is that when a person seeks employment in any particular department of labor, he thereby represents himself to possess the necessary experience and learning.

9. MASTER AND SERVANT—*Presumption of Servant's Competency and Experience—Mines and Minerals—Section 1840, Code of 1919—Burden of Proof.*—The rule that one asking for employment represents himself to possess the necessary experience has not been changed by section 1840 of the Code of 1919 and the burden is, as heretofore, on the plaintiff to show that the employer knew, or ought to have known, of the unfitness and inexperience of an adult and apparently intelligent employee who has voluntarily sought the particular employment in which he has engaged.

10. MINES AND MINERALS—*Instructions—Duty to Warn Miner—Repetition.*—In an action for the death of a miner, it was no error to refuse an instruction requested by plaintiff that it was defendant's duty to warn the miner and instruct him of any danger which defendant or its foreman knew of, where defendant's duty to instruct and warn deceased, whether he was experienced or inexperienced, was sufficiently covered by other instructions given.

11. MINES AND MINERALS—*Instructions—Duty of Mine Owner with Regard to Loose Coal Overhead.*—In an action for the death of a miner, the court modified an instruction asked for by plaintiff in regard to the duty of the mine owner to remove loose coal or slate overhead under section 1863, Code of 1919, by striking out certain words. As given, the instruction stated the law correctly, and the language stricken out, while not abstractly inconsistent with the residue of the language used, might have led the jury to believe that no amount of knowledge on the part of the decedent, or warning to him, would have barred his recovery, whereas, it is well settled that there could be no recovery if the decedent appreciated the danger and remained at work.

12. MINES AND MINERALS—*Instructions—Miner Not Understanding Instructions.*—In an action for the death of a miner, plaintiff asked an instruction that it was not sufficient to relieve the defendant from liability that he instructed the deceased, but it must appear from the evidence that the deceased understood the instructions that were being given for his protection, and that he appreciated any danger which would result from disobedience of the instructions.

*Held:* That the court did not err in refusing this instruction. Unless restricted to the case of an infant or a mentally deficient person, it stated the master's duty too strongly.

13. MASTER AND SERVANT—*Duty to Warn Servant—Sufficiency of Warning.*—The sufficiency of warnings and instructions for employees must depend, first, upon the age, capacity and experience of the employee, and, second, upon the character of the particular employment. Obviously, therefore, only the most general rules can be laid down for all cases. Speaking thus generally, the instruction to a servant must be sufficient to inform him not only of the conditions under which he is to work, but also of the danger resulting from such conditions. In other words, the instructions must adequately disclose the risk.

14. MASTER AND SERVANT—*Duty to Warn Servant—Sufficiency of Warning.*—Stated in the most general terms the extent of the master's obligation in regard to imparting information to a servant is to give him such instruction as will enable him to avoid injury. If the master relies on the fact that he admonished the servant of the danger which caused the injury, he must show that the warning was timely and explicit. Merely going through the form of giving instructions is not sufficient, but the master's duty will be held to have been fully performed if the information which he imparted was sufficient when

supplemented by the servant's personal observation to enable the latter to appreciate the risk of the employment.

15. MASTER AND SERVANT—*Duty to Warn Servant—Reason for Rule.*— The reason for the rule requiring a master to warn and instruct his servant as to the dangers of the employment is that the master must not place the servant in a position in which he cannot adequately care for his own safety. No instructions are requisite when the employee knows, or by the exercise of ordinary care may know, the dangers of his employment.

16. MASTER AND SERVANT—*Warnings to Servant—Servant's Understanding of Warning.*—The law does not require an employer to insure attentiveness to and understanding of a clear and adequate instruction given to an employee of lawful age and ordinary intelligence, but permits an employer to assume that a grown person of ordinary sense will understand and heed instructions and warnings which are aptly and clearly given.

17. MASTER AND SERVANT—*Instructions—Evidence to Support—Safe and Unsafe Way of Performing a Duty.*—In an action against a master for the death of a servant, an instruction in regard to the duty of master and servant where there was a safe and unsafe way for the performance of the work in hand, is unnecessary where there was only one way for the servant to do the work in question.

18. INSTRUCTIONS—*Evidence to Support—Misleading Jury.*—The rule is well settled that it is error to give an instruction where there is no evidence to support it, and if such instruction may reasonably be regarded as having a tendency to mislead the jury, the error in giving it is regarded as prejudicial and will result in a reversal.

19. MINES AND MINERALS—*Safe and Unsafe Way of Performing Work— Instructions Not Supported by the Evidence—Harmless Error.*— In an action for the death of a miner, the court instructed the jury that if the miner had a choice of two ways of performing his duty, one of which was perfectly safe and the other dangerous, and knowing this fact chose the dangerous way and was injured, he was guilty of contributory negligence.

*Held:* That while this was error as strictly speaking, as there was only one way for the miner to perform the work in question, yet it was harmless because the jury could only have taken it to mean that if the miner knew or ought to have known better than to stand in the way of the coal which fell on him, he could not recover.

20. NEGLIGENCE—*Violation of Statute—Proximate Cause—Question for Jury.*—In an action for negligence, where it is alleged that defendant has violated a statute, the general rule is that to constitute actionable negligence there must be a direct causal connection, other than the mere violation of the statute, between the prohibited conduct and the injury; and whether such causal connection does exist is usually a question for the jury. An exception to this rule are statutes which prohibit the employment of children in certain occupations.

21. NEGLIGENCE—*Disobedience of Statutes—Negligence Per Se—Proximate Cause.*—The doctrine that disobedience of a statute or ordinance is negligence *per se* is qualified by the condition that such disobedience must have been the proximate cause of the injury complained of, or at least contributed thereto.

22. MINES AND MINERALS—*Instructions—Presumption that Master Has· Performed the Duties Imposed Upon Him.*—While an instruction that a servant has a right to presume that his master has performed the duties imposed upon him by law, and does not assume any risks arising from the failure of the master to perform his duties, unless he knows of them, is abstractly correct, it has no application to a case where the only violation of duty on the part of the master was a violation of the statute as to warnings and instructions. Obviously, there was no occasion to tell the jury that the servant had a right to assume that he had been instructed and warned.

23. MINES AND MINERALS—*Instructions—Reference to Fellow Servant Doctrine.*—In an action for the death of a miner, where a violation of the duty of the master to instruct and warn the miner was in question, a reference to the fellow servant doctrine was unnecessarily introduced into an instruction by the trial court. The fellow servant doctrine does not apply if the mining act is violated and the violation thereof proximately caused plaintiff's injury. But the instruction in question, while assigning a wrong reason in part, correctly told the jury that under the conditions supposed in the instruction the plaintiff could not recover, and therefore the error was harmless.

24. MINES AND MINERALS—*Place of Work Safe in the First Instance Becoming Unsafe—Knowledge of Miner—Fellow Servants.*—In an action for the death of a miner, if the place where decedent was working when the accident occurred was reasonably safe in the first instance and became unsafe by the negligent manner in which either decedent or a fellow laborer performed their work, and the decedent knew, or could have known, the danger thus arising by the exercise of ordinary care, then, no matter whether decedent's fellow laborer was a fellow servant or stood in some other relation, even that of a vice principal, the plaintiff could not recover.

25. MINES AND MINERALS—*Action for Death of Miner—Evidence that Defendant Carried Liability Insurance.*—In an action for the death of a miner, evidence that the defendant carried liability insurance was wholly irrelevant, and that the protection thus afforded might have tended to render it less careful than it would otherwise have been was likewise wholly irrelevant, because the question of liability depended upon the fact of negligence, and not upon the motives or influences which may have brought it about.

Error to a judgment of the Circuit Court of Dickenson county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*S. H. & Geo. C. Sutherland,* for the plaintiff in error.

*Chase & McCoy,* for the defendants in error.

KELLY, P., delivered the opinion of the court.

J. P. Edwards, while at work in a mine operated by the Laurel Branch Coal Company, was accidentally killed by coal which fell in on him either from the side or the top of the mine. In this action by his administrator for damages, there was a verdict for the company, upon which the court entered the judgment under review.

The declaration alleges at great length a number of breaches of duty on the part of the defendant, but in the light of the evidence the only material allegations are those which charge that the plaintiff's decedent was an inexperienced miner, unacquainted with the ordinary dangers incident to mining coal, and also unfamiliar with certain unusual and extraordinary dangers peculiar to such work in the company's mine and known to it, and that the company failed to comply with its legal duty in warning and instructing him. The other alleged breaches of duty may be disregarded. The particular danger which resulted in the decedent's death developed in the course of work which he could constantly observe as it progressed, and which in a sense he was helping to perform. As stated in the brief of plaintiff's counsel, the danger was such as that "an experienced miner would have known it at a glance." If he was an experienced miner, and was properly informed of any unusual dangers, the injury could not have happened to him without such carelessness on his part as would have barred any right of

recovery, upon familiar and well settled principles. See *Addington* v. *Guests River Coal Co.*, 130 Va. 584, 108 S. E. 695.

The accident occurred in July, 1918. The duties of the defendant to warn and instruct the employees in its mine, whether such employees were experienced or inexperienced, are defined by statute. Acts 1912, chapter 178, section 6, p. 421; Code 1919, section 1840. These statutory duties are somewhat fully discussed in *Clinchfield Coal Corporation* v. *Hawkins*, 130 Va. 698, 108 S. E. 704. As specifically stated in the statute they are as follows:

"It shall be the duty of the mine foreman or assistant mine foreman of every coal mine in this State to see that every person employed to work in such mine shall, before beginning to work therein, be instructed as to any unusual or extraordinary dangers incident to the work in such mine, which may be known to or could reasonably be foreseen by the mine foreman or assistant mine foreman. * * *

"Every inexperienced person so employed shall work under the direction of the mine foreman, his assistant, or such other experienced worker as may be designated by the mine foreman or assistant until he had had reasonable opportunity to become familiar with the ordinary dangers incident to his work."

The plaintiff's decedent was about twenty-three years of age and was well developed physically, although not entirely robust. He was a good and capable worker, and had saved some money from his wages as a laborer on a farm and on public works, but had no experience as a miner prior to his employment in the defendant's mine. He had been engaged there for about two weeks before his death. In point of intelligence he was probably slightly under the aver-

age, and he had a serious impediment in his speech rendering it difficult for him to be understood by other persons, but the evidence as a whole does not warrant a fair inference that the defendant ought to have regarded him as mentally deficient. He had for some time been working on his own account, sometimes at home, sometimes away from home, with his father's approval and consent. When the accident occurred he was working with his older brother, John Edwards, who had been a miner for about a year, but in the defendant's mine for only about five weeks. This brother was doing what is called contract work, mining coal and loading the same into mine cars at a certain price per car. The decedent was employed to assist in loading the coal mined by John Edwards, with and under whom he constantly worked. There is a contention on behalf of the defendant that the decedent was an employee of his brother and not of the company, but the evidence shows conclusively that he was working for and paid by it, although the payment for his work and that of his brother was made to the latter and then divided between them in an agreed proportion.

Some of the evidence tended to show that there are dangers incident to mining for the defendant not usual in other neighboring mines. For example, one witness stated that "this coal at this place in the Widow Kennedy (referring to the name by which the seam of coal in the defendant's mine was known) is all broken, and is deposited in slips, and slides, and pieces of all sorts of shapes and placed in all sort of positions, and very often is not clean, but has dirt in it. An experienced miner can detect where these slips or slides are in this coal both by sounding it, and by the sight. You can see the crevices or seams where the water has

run through it and colored it. The only way that I know how to make the place safe where these slips are is to take them down. That is what I always do when I find them."

John Edwards testified that he had begun to notice some difference in the Widow Kennedy seam as compared with other coal with which he was familiar but had not discovered that it was more dangerous than the coal in other mines until after the accident. He undertook to explain his lack of experience and his inability to appreciate the peculiar dangers in the defendant's mine by saying that, while he had been a miner for about a year, the previous mining which he had observed and participated in was carried on by machinery which cut the coal down, and that he had never worked before in "solid coal like that." He further testified as follows: "It (the coal) was sitting in all kinds of slips and every kind of way nearly that could be thought of; setting in all kinds of shapes, slipping and sliding every way, and it was wet. An experienced miner can tell where these slips are. I have learned that since."

John Edwards and Dave Edwards (the latter being another brother who worked with John and Josh Edwards) both testified that neither of the three were ever warned or instructed as to the peculiar dangers in the Widow Kennedy seam, and that no instructions of any kind were given to the decedent by the mine foreman or his assistant.

The coal was ten or eleven feet high where the accident occurred. The plaintiff's decedent and his brother, John Edwards, were loading a coal car, the former standing on the left and the latter on the right of the mine track when the coal fell on the decedent. The plaintiff contends this coal slipped out of what

we may call a pocket from the right rib or side wall of the mine, while the defendant, on the other hand, contends that it came from the top and upper side of the rib and consisted of a corner of loose coal which had been left hanging up there in the course of the work carried on by John Edwards and his helpers. There was evidence tending to support each of these contentions. It is shown without contradiction or dispute, however, that whether the coal which fell came from the right side or from the right corner at the top, John Edwards had bored a hole in it and tried to shoot it down just before he and his brothers quit work on the evening before the accident. The shot for some reason was not effective and "blew out" without bringing the coal down. John Edwards testified that he drove the hole straight into the rib with a view of turning off a new room. The defendant's testimony tends to show that he put the hole in the alleged overhanging corner so as to loosen and bring it down. In either event, one of the purposes in firing the shot was to get more coal to load into the cars.

John Edwards and his brothers left the mine that evening without going back to see the result of the shot. Dave Edwards for some reason quit the employment of the company that night, and did not thereafter return. When John Edwards and the decedent returned to work the next morning they found that the shot had blown out, and before going to work John Edwards inserted a ten foot steel bar in the hole to see if the coal was loose, but he was unable to prize it down. There was other coal which had previously been shot down from the heading just in front of where the hole had been made and fired, and it was this coal which John and Josh Edwards were loading into the car when the accident happened.

There was evidence to the effect that John Edwards and Josh Edwards had been specifically warned either by the mine foreman or his assistant on the evening before that the coal which fell ought to be brought down before they worked under or near it. This evidence is in conflict with certain other evidence for the plaintiff.

[1] 1. The first assignment of error is that the court refused the plaintiff's motion to require the defendant to make more specific its grounds of defense in respect to the alleged assumption of the risk by the plaintiff's decedent. We do not find from the record that any such motion was ever made by counsel or acted upon by the court.

2. The defendant was required, on motion of the plaintiff, to file grounds of defense, and among them was this: "Contributory negligence of plaintiff's intestate, Joshua Edwards, causing his injuries." Thereupon the plaintiff moved the court to require the defendant "to plead said contributory negligence as required by the statute," and the defendant then filed the following so-called "plea of contributory negligence":

"(1) That the coal which fell on Joshua Edwards was a top coal hanging over the right rib in said mine, which had been undercut by said Joshua Edwards.

"(2) That the said John Edwards and Joshua Edwards were notified to take down this overhanging coal and they, the said John Edwards and Joshua Edwards, the said Joshua Edwards being a servant of and working for the said John Edwards, put a shot or blast in said coal causing the same to become loose, and instead of pulling down said overhanging loose coal, they with knowledge of the danger, having been warned, and also the danger was so apparent the defendant,

by the exercise of ordinary care, would have known same, the said John Edwards and Joshua Edwards carelessly, negligently and without any regard for their own safety started work shoveling coal underneath said loose overhanging coal, thereby making it weaker, causing said coal to become weaker and looser by reason of the negligent acts aforesaid, and fall on the said Joshua Edwards. These negligent acts aforesaid, of Joshua Edwards, were the cause of the injury to the said Joshua Edwards. The said coal which was overhanging owing to the work aforesaid, and the negligent acts aforesaid, and was so situated that same could not be propped.

"And, whereas, for the many reasons above stated, the injury to the said John Edwards was due solely to his own gross and contributory negligence and the defendants ask that this suit be dismissed."

The order of the court entered at the time the foregoing paper was filed shows that it was objected to "because as prepared it did not show contributory negligence, but that the plaintiff was the sole party guilty of negligence;" and the bill of exceptions signed more than a year later certifies that the objection was "because the same was not specific enough," and that the plaintiff "thereupon moved the court to strike the same from the record because not specific enough and because the same did not conform and measure up to the requirements of the statute, requiring such defense to be specifically pleaded."

Reading these two parts of the record together, and considering them in the light of the plaintiff's brief which accompanies and explains the assignments of error, it appears that the assignment here under consideration presents two objections to the so-called plea—first, that it was not sufficiently specific to meet

the requirements of the statute, and, second, that it failed to show the defendant's primary negligence.

[2-4] Neither of the objections is good. As to the first, a mere reading of the specifications will show that they meet any but the most hypercritical test in giving the plaintiff notice of the contributory negligence relied on by the defendant. As to the second objection, the statute was not intended to compel a confession of the defendant's primary negligence as a condition precedent to reliance upon the plaintiff's contributory negligence. To be sure, the question of contributory negligence cannot arise until the negligence of the defendant has been established, but it has always been true, and is still true, that a defendant may at one and the same time claim that the plaintiff has no right to recover because he has failed to prove negligence on the part of the defendant, and, in the alternative, that even if the defendant was guilty of negligence, the plaintiff cannot recover because his own wrongful conduct efficiently contributed to the injury. The only purpose of the statute was to require the defense of contributory negligence to be set out in advance of the trial in such way as to give the plaintiff reasonable notice of the character of proof which it would have to meet and overcome in combating such defense.

[5] 3. The next assignment is that the court ought to have set aside the verdict as contrary to the law and the evidence. From what has already been said in the statement of the evidence, it is clear that the case is one which depended upon the weight and credibility of testimony. We cannot say that the verdict was contrary to the law or the evidence. The jury evidently credited the evidence of the defendant, and in that view of the case the verdict was clearly in accord not only with the evidence but with the law.

4. Many complaints are made as to the ruling of the court upon the instructions.

[6-9] (a) Instruction No. 1 asked for by the plaintiff, so far as material here, is set out below, except that the court interlined the italicized words appearing therein:

"The court tells the jury that, if they believe from a preponderance of the evidence in this case, the deceased, J. P. Edwards, was inexperienced in working in coal mines, then it was the duty of the defendant, *if it knew, or could have known by inquiry of his inexperience*, to only allow him to work under the direction of the mine foreman, the assistant mine foreman, or such other experienced miner as was designated by the mine foreman until the deceased had a reasonable opportunity to become familiar with the ordinary dangers incident to the work to which he was assigned."

It is insisted that the italicized language was erroneously inserted, because it placed an unwarranted limitation on the provisions of the mining act, as now found in section 1840 of the Code of 1919, set out above. In other words, the contention here made is that knowledge on the part of an employer of the inexperience of an employee is, under the terms of the statute, immaterial, regardless of any diligence on the part of the employer to ascertain the facts in that regard. This is not in accord with our view. The statute in question merely changed the common law with respect to instructing inexperienced miners so as to provide a practicable and effective method of imparting the necessary instruction. *Clinchfield Coal Corporation* v. *Hawkins*, 130 Va. 698, 704 108 S. E. 704. The common law rule is that when a person seeks employment in any particular department of labor, he thereby represents himself to possess the necessary experience and learning. 3 Lab. M.

& S., sec. 1168, p. 3107; *Wagner v. H. W. Jayne Chemical Co.,* 147 Pa. 475, 23 Atl. 772, 30 Am. St. Rep. 745. This rule has not been changed by our statute and the burden is, as heretofore, on the plaintiff to show that the employer knew, or ought to have known, of the unfitness and inexperience of an adult and apparently intelligent employee who has voluntarily sought the particular employment in which he has engaged.

In this particular case there was evidence tending to show that the decedent, although employed through the agency of his brother, was solicited by the latter to come to work at the request of a duly authorized representative of the defendant. If this was true, then the presumption of inexperience, according to some authorities, did not arise, and it might in that event have been the duty of the defendant to exercise due care to inform itself reliably upon the subject. But in any view of the question here under consideration, we see no valid ground upon which the plaintiff, in the light of the evidence, could object to the language used by the court in the foregoing instruction. It is not denied that Josh Edwards was an inexperienced miner when he first began work. The defendant either knew that fact or could have easily ascertained it by inquiry of his brother who was and had been for a year working for it. The instruction, therefore, was not affected in the least degree by the addition of the italicized words.

[10] (b) Instruction No. 2 offered by the plaintiff and refused was to the effect that if the jury believed that Josh Edwards was inexperienced in mine work, "then the defendant owed him the duty of warning and instructing him in any danger which they or either of them, or their mine foreman or assistant mine

foreman knew, or in the exercise of ordinary care should have known by either of them."

There was no error in refusing this instruction. The company's legal duty to instruct the decedent, whether he was experienced or inexperienced, was sufficiently covered by plaintiff's instructions 1 and 3. By No. 3 the court told the jury that if Josh Edwards "was an inexperienced man in coal mining, then it was the duty of the defendants, either in person or through their superintendent or mine foreman, to warn and instruct the deceased in any and all unusual dangers known to them, or which should by the exercise of ordinary care have been known to them or either of them." The same duty would have been owing to an experienced miner; and this, with the statement of the defendant's duty to inexperienced miners, as contained in instruction No. 1, already set out, covered fully the statutory duty of the defendant as to instructing its employees.

[11] (c) The plaintiff asked for Instruction No. 6, shown below, which the court gave after first striking out the parts thereof shown in italics:

"The court tells the jury that it was the duty of the defendant to examine the place where the deceased was required to work, and after having inspected to use reasonable care to remove or secure all loose coal overhead in the place where deceased was required to work, so as to prevent danger to the deceased and other persons working in the said place, *and this duty they could not place upon the miner,* as it was the defendants' personal duty to perform, either themselves or through their mine boss, *and any request to any miner to do so was not sufficient to relieve them of their liability in case of injury resulting therefrom.*"

The court did not err in making the deletions complained of. The mining act (Acts 1916, p. 773-4, Code,

sec. 1863) provides that the "mine foreman shall use reasonable care to remove or secure all loose coal, or slate or rock overhead in working places and along haulways so as to prevent dangers to persons employed in such mines." But the same statute also says that "no miner shall continue to work in any working place known by him to be unsafe, or which might have been so known to him in the exercise of ordinary care." The instruction here under consideration, like the statute upon which it is based, deals with loose, overhanging coal, and the instruction was apparently offered to meet the situation in case the jury believed the defendant's theory that the coal fell from the top instead of the side of the mine. As given, the instruction stated the law correctly, and the language stricken out, while not abstractly inconsistent with the residue of the language used, might have led the jury to believe that no amount of knowledge on the part of the decedent, or warning to him, would have barred his recovery, whereas it is well settled that there could be no recovery if the decedent appreciated the danger and remained at work. *V. I. C. & C. Co.* v. *Asbury's Adm'r*, 117 Va. 683, 86 S. E. 148; *Huettel C. & C. Co.* v. *Lawrence's Adm'r*, 117 Va. 728, 86 S. E. 151.

[12, 13] (d) The plaintiff offered the following instruction, designated as No. 7, which the court refused to give:

"With reference to the duty of the defendant to instruct persons employed, it is not sufficient to relieve the defendant that he instructed the deceased (if they should believe any instructions were given), and that the deceased had capacity to understand, but it must appear from the evidence that the deceased did understand the instructions and that they were being given for his protection, and that he appreciated any danger which would result if he did not obey the instructions."

It is insisted that the court erred in refusing the foregoing instruction, and in support of this contention counsel cite *Griffith* v. *American Coal Co.*, 75 W. Va. 686, 84 S. E. 621, L. R. A. 1915 F, 803, and *Lynchburg Cotton Mills* v. *Stanley*, 102 Va. 590, 46 S. E. 908. These cases involved injuries to infant employees under fourteen years of age, and have no application where, as here, the employee is of age and possessed of average intelligence. The above instruction No. 7 was general in its terms, applying alike to all classes of employees, and would apply to the decedent, Josh Edwards, regardless of whether he was of average or less than average intelligence. Therefore, even if there were any evidence in this case to show that the defendant ought to have regarded Josh Edwards as mentally deficient (and we think there is no such evidence), the instruction was wrong. The sufficiency of warnings and instructions for employees must depend, first, upon the age, capacity and experience of the employee, and, second, upon the character of the particular employment. Obviously, therefore, only the most general rules can be laid down for all cases. Speaking thus generally, the instruction to a servant must be sufficient to inform him not only of the conditions under which he is to work, but also of the danger resulting from such conditions. In other words, the instructions must adequately disclose the risk. As said in 3 Lab. M. & S., 2nd Ed., section 1159:

[14] "Stated in the most general terms the extent of the master's obligation in regard to imparting information to a servant is to give him 'such instruction as will enable him to avoid injury.' If the master relies on the fact that he admonished the servant of the danger which caused the injury, he must show that the warn-

ing was timely and explicit. Merely going through the form of giving instructions is not sufficient, but the master's duty will be held to have been fully performed if the information which he imparted was sufficient when supplemented by the servant's personal observation to enable the latter to appreciate the risk of the employment." See also 26 Cyc. 1169; 18 R. C. L. p. 572, sec. 79; 20 Am. & Eng. Enc., 2nd Ed., p. 99; *Taylor* v. *Wootan,*1 Ind. App. 188, 27 N. E. 502, 50 Am. St. Rep. 200; *Shaw* v. *Hazel-Atlas Co.,* 70 W. Va. 676, 74 S. E. 910, Ann. Cas. 1914A, 607; 17 Ann. Cas. 490, note.

[15] The rule as above stated by Labatt is necessarily sound because the reason for the rule is that the master must not place the servant in a position in which he cannot adequately care for his own safety. No instructions are requisite when the employee knows, or by the exercise of ordinary care may know, the dangers of his employment. *Swift & Co.* v. *Hatton,* 124 Va. 426, 439, 97 S. E. 788.

[16] We are not prepared to approve the instruction as it was offered because, unless restricted to the case of a minor or a mentally deficient person, it states the duty too strongly, in that it requires the employer to insure attentiveness to and understanding of a clear and adequate instruction given to an employee of lawful age and ordinary intelligence. The law does not require this, but permits an employer to assume that a grown person of ordinary sense will understand and heed instructions and warnings which are aptly and clearly given.

[17] (e) The plaintiff asked for an instruction which told the jury in effect that where there is a safe and an unsafe way for the performance of the work in hand, it is the duty of the servant to adopt the safe way if

he knows it, or could know it by the use of ordinary care, but that if he does not know the safe way and could not thus ascertain it, then it is the duty of the master to inform the servant of the safe way, and a violation of that duty renders the master liable. The court refused this instruction, but gave the defendant's instruction No. 5 as follows: "The court instructs the jury that if they believe from the evidence in this case that Joshua Edwards had a choice of two ways of performing his duty, one of which was perfectly safe and the other dangerous, and he knew or should by reasonable care have known the fact as to the two ways, and the said Joshua Edwards chose the dangerous way and was injured, then the said Joshua Edwards was guilty of contributory negligence, and the plaintiff cannot recover of the defendants."

There was no necessity for either of these instructions. Both of them ought to have been refused because neither of them had any proper application to the case. Strictly speaking, there were no two ways for the plaintiff to do the work of loading coal into the car with a shovel. Of course it is true that loading the coal was part and parcel of the mining which the plaintiff's decedent and his older brother were carrying on, and it may be said that in a sense it was "an unsafe way" to work in the place while exposed to falling coal. The danger, however, was not so directly connected with the actual loading of the coal as that either instruction No. 9 asked for by the plaintiff or instruction No. 5 given for the defendant contained a very apt expression of the law. The question was whether the deceased had been given sufficient opportunity to know the danger of working in that place and this question was fully covered by other instructions which have already been set out in the course of this opinion.

[18, 19] The rule is well settled that it is error to give an instruction where there is no evidence to support it, and if such instruction may reasonably be regarded as having a tendency to mislead the jury, the error in giving it is regarded as prejudicial and will result in a reversal. See the cases cited in Burks' Pl. & Pr., 2nd Ed., sec. 258, note 14. Defendant's instruction No. 5, however, was harmless in this case. If the jury attempted to apply it at all, they could only have done so by taking it to mean that if the plaintiff's decedent knew or ought to have known better than to stand in the way of the coal which fell on him, he could not recover.

(f) The court modified and then gave instruction No. 10, asked for by the plaintiff, and complaint is made of the modification, but it was plainly unimportant and inconsequential, and will not be further noticed.

(g) Instruction No. 11, offered by the plaintiff and refused, told the jury in effect that if the defendant failed to comply with the mining law (now found in Code, section 1840) in respect to instructing Josh Edwards, before he began work in the mine, as to any unusual and extraordinary dangers therein, or, if he was an inexperienced miner, in respect to the superintendency and direction of his work by an experienced miner until he had been afforded reasonable opportunity to become familiar with the dangers incident to the work, his injuries, if received by him in the course of the employment, must be regarded as having been proximately caused by such violation of the statute.

[20] In support of the legal proposition asserted in this instruction, counsel for plaintiff cite *Miller Mfg. Co.* v. *Loving*, 125 Va. 255, 99 S. E. 591, and *Standard*

*Red Cedar Co.* v. *Monroe*, 125 Va. 442, 99 S. E. 589.
These cases belong to a peculiar and restricted class.
They are based upon statutes which absolutely pro-
hibit the employment of children in certain occupations.
In such cases, while the authorities are somewhat con-
flicting, the courts have very generally held that the
employment in itself is a tort and is to be conclusively
regarded as the proximate cause of any injury suffered
by the child while engaged in the prohibited employ-
ment. The general rule, however, at least in this
State, and we think in most jurisdictions, is that to
constitute actionable negligence there must be a direct
causal connection, other than the mere violation of
the statute, between the prohibited conduct and the
injury; and whether such causal connection does exist
is usually a question for the jury. The rule in general
is fully discussed in the case of *Standard Oil Co.* v.
*Roberts*, 130 Va. 532, 107 S. E. 838. We were dealing
there with a plaintiff's violation of an ordinance as
constituting contributory negligence, but the same
principle was involved as here, and the general rule
announced as above stated. In that case Judge
Prentis, delivering the opinion of the court, said:
"The jury is not permitted to decide whether or not
the violation of an ordinance under such circumstances
is negligence, and the jury should be clearly told so;
leaving them to determine in proper cases whether
considering all the attendant circumstances such negli-
gent, unlawful act of the plaintiff was a concurring,
contributing and efficient cause of the injury." In 1
Thompson on Neg., sec. 10, p. 12, the author, dealing
with negligence arising from the violation of a statute
or an ordinance, says: "Here the general conception
of the courts, and the only one that is reconcilable with
reason, is that the failure to do the act commanded,

or the doing of the act prohibited, is negligence as a matter of law, otherwise called negligence per se; and this, irrespective of all questions of the exercise of prudence, diligence, care or skill; so that if it is the proximate cause of hurt or damage to another, and that other is without contributary fault, the case is decided in his favor, and all that remains to be done is to assess his damages.

[21] In Vol. 7 of the same work (White's Supplement 1907), section 10, page 3, it is said: "The doctrine that disobedience of a statute or ordinance is negligence *per se* is to be understood as qualified in all cases by the condition that such disobedience must have been the proximate cause of the injury complained of, or at least contributed thereto."

See also Watson on Damages for Personal Injury, section 256; 21 Am. & Eng. Ency. L. (2d ed.), p. 480; 29 Cyc., p. 439, cl. (g); 20 R. C. L., p. 43, sec. 37.

Plaintiff's instruction No. 4 told the jury that if they should believe from the preponderance of the evidence that the defendant was guilty of negligence as charged in any of the counts of the declaration, and that such negligence was the proximate cause of the plaintiff's injury, they should find for the plaintiff; his instruction No. 5 contained a definition of proximate cause as used in the instructions; and his instructions 1 and 2 left to the jury the question whether the violation of the statute was the cause of the injury. His proposed instruction, No. 11, on the other hand, took from the jury the question of proximate cause, and told them that they were obliged to find that the violation of the statute was the proximate cause of the plaintiff's injury. This was wrong and the instruction was properly refused.

[22] (h) The plaintiff requested and the court refused the following instruction, to-wit:

"The court further says that a servant has a right to presume that the master has performed the duties imposed upon him by law, and does not assume any of the risks arising from the failure of the master to perform said duties, unless he knows of them, and appreciates the dangers arising therefrom."

There was no error in refusing this instruction, because while it embodied a correct legal proposition, it had no application to the case as made by the evidence. The only violation of duty on the part of the defendant which the evidence tended to show, and which at the same time could be regarded as the proximate cause of the injury, was a violation of the statute as to warnings and instructions, and there was certainly no occasion for telling the jury that the plaintiff's decedent had a right to assume that he had been instructed and warned. The court accorded to the plaintiff his full legal rights in this particular by telling the jury that if the defendant viloated the statute, and violation thereof caused the injury, he had a right to recover. This latter proposition was in substance stated to the jury more than once in the course of the instructions.

[23, 24] (i) Defendant's instruction No. 2 was objected to, but given, and the plaintiff excepted. The instruction was as follows: "The court instructs the jury that if the jury believes from the evidence that the place where Joshua Edwards was to work was reasonably safe in the first instance and was afterwards rendered unsafe by the negligent manner in which Joshua Edwards or John Edwards performed their work, and that Joshua Edwards was cognizant of the fact, or should have known the danger, by the exercise of reasonable care, then the negligence was the negligence of the plaintiff or a fellow servant, and plaintiff cannot recover."

This is a curiously phrased instruction, and unnecessarily but harmlessly brings into the case a reference to the fellow servant doctrine. That doctrine, of course, would not apply if the mining act was violated and the violation thereof proximately caused the plaintiff's injury. This was pointed out in *Clinchfield Coal Corporation* v. *Hawkins*, cited *supra*. But the instruction, while assigning a wrong reason in part, correctly told the jury that under the conditions supposed in the instruction the plaintiff could not recover. If the place was reasonably safe in the first instance and became unsafe by the negligent manner in which either Josh or John Edwards performed their work, and Josh Edwards knew, or could have known, the danger thus arising by the exercise of ordinary care, then, no matter whether John Edwards was a fellow servant or stood in some other relation, even that of a vice principal, the plaintiff, upon the plainest principles, could not recover. This in substance is what the instruction told the jury, and the reference to the relationship of fellow servant could not in any way have prejudiced the plaintiff.

It is said that there was no evidence to justify the hypothesis in the instruction that the place was rendered unsafe in the course of the work, but this contention is plainly wrong. It was the defendant's theory that the coal which fell was negligently left hanging overhead in an obviously dangerous condition in the course of the work prosecuted by John Edwards while his brother. Josh was working with him. There was evidence tending to show that this was true, and the instruction, therefore, cannot be said to be without evidence to support it.

(j) The plaintiff also excepted to the giving of defendant's instructions Nos. 3, 6, 7, 8, 10, 11 and 12. We

have given careful attention to all of these instructions and to the objections thereto specified by counsel in the brief accompanying and forming a part of the assignments of error, and it must suffice to say that in so far as all such objections have not hereinbefore been discussed and disposed of, they present no questions of importance, and do not demand further consideration.

[25] 4. The last assignment of error arises in this way: The defendant (although generally referred to in this opinion in the singular and as a company) is not a corporation, but a partnership composed of four individuals, one of whom, Dr. T. C. McNeer, testified as a witness. On his examination in chief he had said that the defendant company was a partnership and that he was one of the partners. On cross-examination he was asked this question: "You have stated that the defendant is a partnership composed of yourself and others. I will now ask you if there is a recovery in this case if there is any liability on any one else than the defendant." The defendant excepted to this question and the court refused to permit an answer. Thereupon the plaintiff avowed that if the witness were permitted to answer he would say that there would be a liability on the insurance company, the United States Fidelity and Guaranty Company of New York, and that said company was present, making and assisting in the defense of the case.

It is said in the brief for the plaintiff that defendant's counsel had in the opening statement spoken of the hardship it would cause if judgment were rendered against the defendant; that Dr. McNeer "was on the stand apparently for no other purpose than to win the sympathy of the jury;" and that the question above quoted was asked and the answer thereto sought "to

counteract this unfavorable expression of counsel and the doctor's appearance before the jury,'' by showing that the defendants were insured and that a verdict against them would result in no hardship. These excuses for the question do not appear in the record. It is further said in the brief: "Besides, it was a matter of common knowledge in the coal fields that operators of coal mines are not as careful if insured as if not, for the consequent loss falls on the insurer and not on the operators when there is negligence resulting in injury.''

It is clear, both upon reason and authority, that the court was right in refusing to permit the question to be answered. That the company carried liability insurance was wholly irrelevant, and that the protection thus afforded may have tended to render them less careful than they would otherwise have been was likewise wholly irrelevant, because the question of liability depended upon the fact of negligence, and not upon the motives or influences which may have brought it about. *Va. Car. Chem. Co.* v. *Knight,* 106 Va. 674, 681, 56 S. E. 725.

This case was tried upon correct principles, the determinative questions, which, as hereinbefore pointed out, depended for their decision upon the weight and credibility of the testimony, were fairly submitted to the jury; and the verdict must stand.

*Affirmed.*