POCAHONTAS CONSOL. COLLIERIES CO., Inc., v. JOHNSON.

(Circuit Court of Appeals, Fourth Circuit. July 13, 1917.)

No. 1508.

1. MASTER AND SERVANT ⟨⟩137(1)—MINES—LIGHTS ON CARS—STATUTES.
   Virginia Mining Act, § 13 (Pollard's Code Supp. 1916, p. 298), requiring a light on the front of moving cars, except where cars are being hauled by gathering motors or mule teams at a place other than a main heading, applies where loaded cars are being pushed by a motor to the foot of the incline to be there connected to a hoist chain, which carries them to the tipple.

2. MASTER AND SERVANT ⟨⟩139—INJURY—PROXIMATE CAUSE.
   Breach of the statutory duty to give warning of the approach of cars in a mine by a light on the front of them *held* proximate cause of injury to an employé struck by them while waiting on the track for cars to pass on the other track.

3. PENALTIES ⟨⟩8—RIGHT TO SUE—VIOLATION OF PENAL STATUTE.
   Any one of a class for whose special benefit a penal statute is enacted has right of action for injuries resulting to him from its violation.

4. MASTER AND SERVANT ⟨⟩204(2)—ASSUMPTION OF RISK—VIOLATION OF PENAL STATUTE.
   An employé does not assume the risk of known violation by the employer of a penal statute requiring a specific appliance deemed by the Legislature necessary for safety of employés.

5. MASTER AND SERVANT ⟨⟩289(16)—CONTRIBUTORY NEGLIGENCE—MINERS—JURY QUESTION.
   It cannot be said as matter of law that an employé struck by cars in a mine was negligent in entering the mine in a way prohibited by Virginia Mining Act, § 8, in terms applicable only where other good roads are provided for that purpose, where there is evidence for the jury that the roof of the manway was not safe.

6. MASTER AND SERVANT ⟨⟩241—CONTRIBUTORY NEGLIGENCE—MINERS—TRAVELING ON MOTOR ROAD.
   Going into the drift mouth of a mine to where it intersects, near the tipple, the entrance from the tipple, there to take a car and ride thereon into the mine, is not traveling on foot to work on a motor road, in violation of Virginia Mining Act, § 8, relative to contributory negligence of a mine employé struck by an unlighted car.

7. MASTER AND SERVANT ⟨⟩243(5)—CONTRIBUTORY NEGLIGENCE—CUSTOMARY VIOLATION OF RULE.
   Relative to contributory negligence of an injured mine employé, the rule of the mine operator against riding on cars without authority is inapplicable, where the method of entering the mine by riding on cars, taking them where the drift mouth intersected the entrance from the tipple, was practiced so obviously and constantly as to warrant the inference that it was authorized and sanctioned by the employer.

8. MASTER AND SERVANT ⟨⟩289(16)—CONTRIBUTORY NEGLIGENCE—STANDING ON TRACK IN MINE.
   Though there was a space of five and a half feet between the tracks in a mine, it was not contributory negligence as matter of law for an em-

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ployé, while cars were passing rapidly on one track, to stand on the other track, where he was struck by cars not lighted at the front as required by statute.

9. MASTER AND SERVANT ☞235(9)—CONTRIBUTORY NEGLIGENCE OF MINER—LISTENING FOR CARS.

Contributory negligence of employé struck by loaded cars on a track in a mine cannot be based on failure to listen, where effort to listen would have been useless because of the noise of empty cars passing on the other track.

10. DEATH ☞58(1)—CONTRIBUTORY NEGLIGENCE—PRESUMPTION.

There is a presumption, which defendant in action for death must overcome by affirmative proof, that deceased, struck by a car on a track in a mine, looked and failed to see the car.

11. DEATH ☞58(1)—CONTRIBUTORY NEGLIGENCE—PRESUMPTION—EVIDENCE.

Evidence, in an action for death from being struck by a car in a mine, held insufficient to warrant finding, against presumption, that deceased did not look or that he could have seen the car in time.

12. APPEAL AND ERROR ☞1067—HARMLESS ERROR—REFUSAL OF INSTRUCTION.

There being insufficient evidence to overcome the presumption that deceased, killed by a car in a mine, looked and failed to see the car, refusal of instruction that it was his duty to look, and that if he failed to do so, and by looking he could have seen the car in time, he was guilty of negligence, barring recovery, was harmless.

13. APPEAL AND ERROR ☞1056(3)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Exclusion of witness' statement that if he had looked he could have seen the cars, was harmless, as such testimony could have little, if any, weight in the face of the positive statement of another, with him at the time, that he looked and did not see them.

14. MASTER AND SERVANT ☞131—CONSTRUCTION OF STATUTE BY MINE INSPECTOR—DEFENSE BY MASTER.

The mine inspector's erroneous construction of a statute as not requiring a light on moving cars at the point in a mine where they struck and killed a miner, even if communicated to the mine operator, could not avail the operator, actual damages only being claimed.

Knapp, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Virginia, at Big Stone Gap; Henry Clay McDowell, Judge.

Action by F. L. Johnson, administrator of J. D. Ross, deceased, against the Pocahontas Consolidated Collieries Company, Incorporated. Judgment for plaintiff, and defendant brings error. Affirmed.

E. M. Fulton, of Wise, Va., and S. C. Graham, of Tazewell, Va. (Graham & Hawthorne, of Tazewell, Va., and Fulton & Vicars, of Wise, Va., on the brief), for plaintiff in error.

William G. Werth, of Norton, Va., and William H. Werth, of Tazewell, Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. This action is for damages caused by the death of J. D. Ross, an employé who was killed in defendant's coal mine. There were two main ways into the mine, the drift mouth and the entrance at the tipple. These intersected at a point about 800 feet from the drift mouth and about 300 feet from the tipple entrance. From the tipple to a point about 800 feet inside, the main entry was

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

244 F.—24

double-tracked, the track on the right going into the mine being used for empty cars and that on the left for loaded cars. The cars were moved by an electric motor within the mine, and by a chain hoist or "creeper" from the foot of the incline to the tipple. In the movement of these loaded cars from within it was necessary to uncouple the electric motor from the cars at a point about 300 feet from the tipple. The motor then crossed over a switch to the track for empty cars, ran back into the mine to the point where the empty and loaded car tracks joined, then forward on the loaded car track, coupled to the cars from the rear, and pushed them forward to the foot of the incline, where they were connected to the creeper, which carried them to the tipple. After being unloaded the cars then drifted back into the mine on the track for unloaded cars.

Ross, a mine engineer, together with two helpers, Herrold and Murray, entered the drift mouth and walked in as far as the intersection of the two entries. Upon reaching the intersection, which was only a few feet from the cross-over which the motor took to change from the front to the rear of the cars, he found the motor was then making the change so as to run down and get behind the loaded cars and push them to the creeper. Ross started to follow the motor then backing down the track which was used for empty cars, when the motorman told him not to follow but to wait until a train of empties came by going into the mine. Murray asked the motorman whether the empties were to be pulled or pushed into the mine, and the motorman replied that they were to be pushed in. Ross, Herrold, and Murray stopped and stepped back on the track for loaded cars and stood there waiting for the empty cars to pass. The reason for not going in on the motor pushing cars into the mine seems to have been that it was dangerous to do so, while it was comparatively safe to go in on a motor pulling the cars. While a train of empties was passing them, making a loud rumbling noise, the train of loaded cars, to which the motor had in the meantime coupled in the rear, struck and injured Herrold and ran over and killed Ross. The train of loaded cars had no light on the front end, the motor with a light being at the rear. The nearest light to the scene of the accident was a 32 candle-power electric lamp attached to a post about 30 feet away. Each of the men had a cap with a carbide light used by mining engineers.

The court below entered judgment upon a verdict found in favor of the plaintiff for $5,083 and costs. The charge of negligence, the basis of the verdict, was the failure of defendant to have a light on the front of the train of cars, the allegation being that the light on the car would have warned Ross and his companions of its approach.

Among other precautions for the safety of miners, the Virginia statute, under penalty for disobedience, requires the following:

"On all haulways where hauling is done by machinery of any kind, the mine foreman shall provide a proper system of signals and for the carrying of a conspicuous light on the front, and a light or flag on the rear, of every trip or train of cars when in motion, provided that this shall not apply to trips being hauled by gathering motors or mule teams when operating on other than main headings, and when hoisting or lowering men occur before daylight in the morning or at evenings after darkness." **Virginia Mining Act, § 13 (Pollard's Supplement 1916, p. 298).**

[1] The accident did not occur while cars were being hauled by gathering motors or mule teams at a place other than a main heading, and therefore the defendant's contention that there was no duty to provide a light on the front of the moving cars is without merit. No place in a mine would fall more clearly within the letter of the statute and the protection it was designed to afford than that where the accident occurred. Without artificial light, the place was absolutely dark and there was much movement of cars.

[2, 3] Under the circumstances stated, evidently the breach of the imperative statutory duty to give warning of the approach of the cars by a light in front was such a probable, proximate cause of the accident as to afford sufficient support for the judgment, unless there was such assumption of risk or contributory negligence by Ross as to defeat the action. Minneapolis, etc., R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995 (May 21, 1917). Any one of a class for whose special benefit a penal statute is enacted has a right of action for injuries resulting to him from its violation. Texas, etc., R. Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874.

[4] There is no doubt that Ross knew that the defendant's method of work was to push the loaded cars to the tipple without a light in front; and the court was requested, but refused, to charge that if he had that knowledge he assumed all risk incident to the absence of the light. Thus arises the question whether an employé assumes the risk of known violation by the employer of a penal statute requiring a specific appliance deemed by the Legislature necessary for the safety of employés. Our conviction, supported by the great and growing current of authority, is clear that he does not, though the decisions are in hopeless conflict on the subject. The arguments in favor of the opposing views are stated by Judge Taft in Narramore v. Cleveland, etc., R. Co., 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68, and by Judge Carland in Denver, etc., R. Co. v. Norgate, 141 Fed. 247, 72 C. C. A. 365, 6 L. R. A. (N. S.) 981, 5 Ann. Cas. 448. Neither the Supreme Court of the United States nor the Supreme Court of Appeals of Virginia have directly passed on the question. The cases are collated in 5 Labatt on Master and Servant, 5061, 6 L. R. A. (N. S.) 981, 26 Cyc. 1181, and annotations of 1914–1917, and other text-books and annotated cases.

Assumption of the risk of a business inherently dangerous, but conducted with due care, is a doctrine evidently fair and just. But the doctrine of assumption of risk by the servant of the continued negligence of the master, because such negligence was known to the servant, is a hard one and all statutes looking to relief from it should be liberally construed against it. Penal statutes requiring safeguards for laborers rest on the care of the state for the employé for the sake of himself, of the persons dependent on him, and of the community. The primary and insistent necessity for their enactment is that men will work in mines and other dangerous places at the constant risk of death or injury whether such precautions are taken for their safety or not. The Legislature assumed that men will work in the mines without the protection of the required lights; otherwise the enactment would not

have been necessary. In this case it is probable there was not a man less in the mine because of defendant's failure to provide the safeguard of a light on the front of moving cars. Hence the precautions which the Legislature regards obviously necessary to safety it places out of the domain of waiver by the employé or of contract, either express or implied, between the parties, and requires such precautions as a matter of public policy, under the sanction of penalties inflicted for failure to provide them.

The proposition that the violation by the master of a penal statute intended for the protection of the servant as a matter of public policy is nothing more than ordinary negligence, and stands on the same legal footing as common-law negligence, seems to us obviously and fundamentally unsound.

Assumption of risk arises either out of the contract of employment, as an incident of it, or out of the status or relation voluntarily assumed and continued by the employé towards the instrumentalities of the employer. In the one view the statute, with its requirements and penalties, attaches to the contract as a part of it; and in the other view it becomes an element of the status or relation. Assumption of risk is an affirmative defense. Baltimore, etc., R. Co. v. Taylor, 186 Fed. 828, 109 C. C. A. 172. In this case its two elements would be violation of a penal statute by the employer, and waiver or acceptance of the violation without objection by the employé. Hence, to make out its defense of assumption of risk the defendant must assert, as one of its elements, its own violation of a penal statute. No one can assert an affirmative claim of any kind when one of its essential elements is his own violation of a criminal statute.

From this the conclusion follows that it would have been tautological for the statute to abolish in express language the defense of assumption of risk as to the absence of lights, since in making their absence criminal it did that and more. The doctrine has been applied to usury statutes and many others. A penal statute against usury makes waiver of its provisions ineffectual, without any express enactment that it should be so. We conclude that the District Judge was right in refusing to instruct the jury that the deceased assumed the risk of defendant's violation of a penal statute requiring lights on the approaching car.

[5-7] Error is next assigned in the refusal to instruct the jury that Ross was guilty of contributory negligence and could not recover. Assumption of risk and contributory negligence stand in a different legal relation to the violation of a penal statute. Assumption of risk imports no delict on the part of an employé, and hence it may well be held inapplicable when an employé is injured in consequence of the violation by his employer of a penal statute. Contributory negligence, on the contrary, is a delict or neglect of duty by the employé, and hence he cannot recover for the delict of the employer, even in violation of a statute, if his own delict has contributed to his injury as a proximate cause.

The first alleged act of negligence attributed to the deceased was going into the mine through the drift mouth when he should have entered

through a manway provided for all employés.     Section 8, Virginia Mining Statute; enacts under penalty that "no person shall travel on foot to and from his work upon any slope, engine plane or motor road when other *good roads* are provided for *that purpose."* If Ross entered the mine in violation of this statute, there would be ground to say that he was guilty of contributory negligence per se.     Southern R. Co. v. Rice, 115 Va. 235, 78 S. E. 592.   More accurately, there could be no recovery, because Ross would have lost his life in consequence of his own violation of a criminal statute.     But the court could not say as a matter of law that another "good road" was provided, for there was evidence for the jury tending to show that the roof of the manway was not safe.     Besides, Ross did not go into the drift mouth with the intention of traveling on foot.     The evidence tended to prove a custom for the engineers to go where Ross was and ride in on the cars, and that therefore Ross was not in the position of a person who traveled on foot.     In addition it was for the jury to say whether this method of entering by riding on the cars was so near the tipple and practiced so obviously and constantly as to warrant the inference that it was authorized and sanctioned by the defendant.     If it was, then neither the above-cited statute nor the defendant's rule against riding on cars without authority would apply.

[8] The five and a half foot space between the tracks was sufficient for Ross and his party to stand between the tracks in safety.     But the empty cars were passing rapidly on the other track, and it was a natural impulse, even of a prudent man, to stand away from them. If the defendant had warned Ross of the approach of the cars by a light on the front car, as it was its statutory duty to do, the argument that he was guilty of contributory negligence as a conclusion of law, in being on the track, would be very strong.     But to hold that without such warning it is contributory negligence per se to stand on a track in the narrow spaces of a coal mine because there is another place to stand would be to exact as a matter of law perfection of care. Even on surface roads, the question is usually one for the jury whether an employé is guilty of contributory negligence in standing or walking on a railroad track.     Erie R. Co. v. Purucker, 244 U. S. 320, 37 Sup. Ct. 629, 61 L. Ed. 1166 (June 4, 1917).     There was no error in refusing to direct a verdict for the defendant.

[9-12] The following requested instruction was refused:

"The court instructs the jury that when deceased, Ross, took a position on the loaded track to wait for the passing of the cars on the empty tracks (whether the taking of such position was negligent or not), it was the duty of the deceased to look and listen for the approach of cars on the loaded track on which he was standing; and if he failed to so look and listen, and by either looking or listening he could have discovered the approach of the cars on the loaded track in time to have gotten out of the way and prevented said accident, then he was guilty of such negligence as bars any recovery in this case, and the jury shall find for the defendant."

The duty to look and listen, as we held in Dernberger v. Baltimore, etc., R. R. Co., 243 Fed. 21, ―― C. C. A. ―― (May, 1917), is not absolute, but depends on circumstances.     Effort to listen was in this case useless, because the noise of the empty cars made it impossible to hear

and distinguish the sound of the loaded cars. If it be assumed as a matter of law that the circumstances in which Ross was did impose on him the duty to look, and that in this case the request was a correct proposition of law, which might well have been given to the jury, careful consideration leads us to the conclusion that giving it would not have affected the result. The presumption is that Ross did look and failed to see the cars. Texas, etc., R. Co. v. Gentry, 163 U. S. 358, 16 Sup. Ct. 1104, 41 L. Ed. 186; Baltimore, etc., R. Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262. The burden was on the defendant to overcome this presumption by affirmative proof. Central, etc., R. Co. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252. Such affirmative proof may be furnished by circumstances as well as by direct evidence. The circumstances relied on here to rebut the presumption were the light on the motor behind the approaching cars, the carbide lights on the caps of the three men, and the electric light on a pole near by. It is argued that the jury might well have concluded that these lights were sufficient to enable Ross to see the approaching cars if he looked. The evidence as to the power of the electric light and the carbide light, and as to the location of the stationary electric light, and the light on the motor, standing alone, would leave any fair mind in serious doubt whether the presumption that Ross had looked was overcome, and whether in the darkness of a mine he could have seen the moving cars in time to escape. The direct evidence could hardly fail to solve the doubt in favor of the conclusion that he could not have seen the cars. Herrold and Murray were the only persons on the ground. Herrold testified positively, and his testimony is not disputed, that he did look down the loaded track and did not see the cars. Murray's testimony was negative to the effect that he did not look at all. Hence we conclude that the evidence that Ross could have seen the cars if he had looked is too slight to warrant the jury in finding, contrary to the presumption, that he did not look or that he could have seen the cars in time.

Our conviction that this alleged error in the charge was not material is strengthened by the fact that the District Judge gave the following comprehensive instruction on the subject of contributory negligence:

"The court instructs the jury that the defendant was not the insurer of the safety of J. D. Ross, but that it was the duty of J. D. Ross to exercise reasonable care for his own safety; and if you believe from the evidence that he failed in any way to exercise such reasonable care for his own safety, and that his failure to exercise care for his own safety contributed proximately to the happening of the accident which caused his death, you will find for the defendant."

[13] There was technical error in the exclusion of Murray's statement that if he had looked he could have seen the cars. But this was a mere opinion, which could have had little, if any, weight in the minds of the jury in face of Herrold's positive statement that he did look and did not see them.

[14] All the material evidence alleged to have been erroneously excluded was afterwards admitted, except the opinion of Murray above referred to, and that of the mine inspector that the statute requiring

a light on the moving cars did not apply to this place in the mine. The claim was for actual damages only, and erroneous construction of the statute by the mine inspector, even if communicated to the defendant, would have availed nothing. The testimony alleged to have been improperly admitted was obviously either incompetent or not material.

On consideration of the whole case, we can find no error which we think could possibly have affected the result.

Affirmed.

KNAPP, Circuit Judge (dissenting). In the circumstances here disclosed I cannot agree that defendant was precluded from setting up the defense of assumed risk. Ross had been in the company's employ for a number of years, and was fully aware that the statute in question, though observed elsewhere in the mine, was at no time complied with at this particular place. He was as familiar with the facts in that regard as any one could be, and as able to appreciate the increased hazard resulting from neglect to put a light on the front car of a loaded train at this point, when the motor was detached to take the crossover to the other track.

As respects the right to plead assumption of risk in such a case, I do not see that there is any distinction between disregard by the employer of a common-law duty and disregard of a statutory duty. The employé's knowledge of the default and of the added danger therefrom is clearly a fact, or question of fact, which depends in no wise upon the nature of the default, and if that fact is available as a defense in the one case, as is conceded, why should it not also be available in the other? The majority opinion says because "to make out its defense of assumption of risk the defendant must assert as one of its elements its own violation of a penal statute." But in precisely the same sense the defendant "must assert" its own dereliction, as an element of the defense of assumed risk, when the negligence charged is the violation of a common-law duty. If this defense rests at all upon the admission of wrongdoing, why should it be taken away by admission of failure to comply with a statute, and not taken away by admission of failure to comply with a plain and definite common-law obligation? But I venture the belief that the answer of the majority involves a misconception. To my mind the defense of assumption of risk is no more based upon acknowledgment of fault than is the defense of contributory negligence, which admittedly may be interposed although the cause of action sued on is the violation of a penal statute. The latter defense rests upon the employé's acts, the former upon his knowledge, but neither of them depends upon the assertion of a breach of duty. What the defendant in this case says is that Ross had full knowledge of the fact upon which its negligence is predicated, namely, the habitual omission of a light on the forward car, when a train arrived at the place in question and the motor was detached for the purpose of pushing the cars up the incline; that he was at all times cognizant of whatever danger resulted from that omission; and that he was therefore chargeable with assuming the risk of which he was perfectly aware. On the undisputed proofs of record, I am of opinion that the defense of as-

sumption of risk was as valid and legitimate in this case as was the defense of contributory negligence.

Moreover, as the jury might well have found, Ross himself constantly violated a Virginia statute, with the knowledge and consent of defendant, by entering the mine through the drift mouth instead of going in by the "good road" provided for that purpose. We have, then, this rather peculiar, if not illogical, situation, that the suit for causing the death of Ross is not barred or the right of recovery in the least impaired by the circumstance that he put himself in a place of danger in violation of one law of the state, because his violation thereof was known and assented to by the defendant, yet its violation of another law of the state, though such violation was known and assented to by Ross, operates nevertheless to destroy a defense long recognized and upheld in negligence cases.

But I refrain from further discussion of a question upon which volumes have been written and courts of high standing are hopelessly divided. The opposing views are well illustrated by the Narramore Case, 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68, and the Norgate Case, 141 Fed. 247, 72 C. C. A. 365, 6 L. R. A. (N. S.) 981, 5 Ann. Cas. 448. Believing the later case, to which I can add nothing, to be the better reasoned, I think it should be followed until the Supreme Court otherwise decides.

It goes without saying that the enactment which imposes a duty upon the employer may provide that its nonobservance shall deprive the employer of the defense of assumed risk, or for that matter of the defense of contributory negligence. Numerous examples of this appear in recent legislation, both federal and state. And it is conceivable, though I know of no instance, that a statute could be so framed as to effect that result by necessary and unavoidable implication. It is also well settled that the construction of such a statute by the highest court of the enacting state must be followed by the federal courts in cases arising in that state. Columbia Box Co. v. Saucier, 213 Fed. 310, 129 C. C. A. 656. But the instant case belongs to none of these classes. The Virginia Supreme Court of Appeals has not passed upon the provision under review, and there is nothing in its language, as I read it, which indicates an intent to deprive the offending employer of any defense he might otherwise assert, or to subject him to any different penalty than that fixed by its terms. The statute itself prescribes the method of its enforcement, and in my judgment it is not for the courts to say that other and unexpressed consequences shall follow its violation. I must therefore vote to reverse the judgment for error in excluding the defense of assumption of risk. Upon the issue of contributory negligence I express no opinion.