# Richmond.

## ATLANTIC COAST LINE RAILROAD COMPANY v. A. D. BELL.

### March 1, 1928.

1. MASTER AND SERVANT—*Negligence—Virginia Safety Appliance Act—Proper Guarding of Machinery and Instrumentalities.—*Under the safety appliance act, Code of 1919, section 1830, the master is not expected to guard the instrumentalities in such a way as to materially interfere with their practical use and efficiency. ·

2. MASTER AND SERVANT—*Negligence—Virginia Safety Appliance Act—Proper Guarding of Machinery and Instrumentalities—Rip-Saw—Questions of Law and Fact—Case at Bar.—*The instant case was an action by an employee in defendant's car-repair shops for an injury sustained while engaged in the operation of "free cutting" or "cutting to the line." The question at issue was whether the rip-saw was properly guarded as required by the safety appliance act, Code of 1924, section 1830. From the evidence produced it was clear that the guard in question, even if proper in other respects, could have been constructed to come down appreciably lower over the saw without in any manner interfering with the operation in "cutting to the line" or the practical use of the saw for that purpose. The question was whether the guard provided by the defendant adequately protected· plaintiff from injury by the saw as far as practicable, considering the purpose for which he was using it.

   *Held:* That this question was for the jury and their verdict for the plaintiff on conflicting evidence resolved it in his favor.

3. MASTER AND SERVANT—*Negligence—Virginia Safety Appliance Act—Proper Guarding of Rip-Saw—Questions of Law and Fact—Case at Bar.—*In the instant case plaintiff, an employee in defendant's car-repair shops, was injured while operating a rip-saw in "free cutting" and the auestion was whether the saw was properly guarded as required by the safety appliance act (Code of 1924, section 1830). There wasqbundant evidence that when the guard in question was lowered as far as it could be, it left the saw unguarded for a space of five inches or more between the guard and the board then being ripped; that this was an unnecessary amount of space for "free cutting;" and that it was practicable to have provided a guard for "free

cutting'' which would have materially lessened, if not eliminated, the danger to which plaintiff was exposed and which caused the loss of his hand.

*Held:* That the evidence was sufficient to warrant the jury in finding, as it did, that the rip-saw was not properly guarded as required by the statute.

4. MASTER AND SERVANT—*Negligence—Safety Appliance Act—Protection of Employees—Violation of Statute Constitutes Negligence—Question whether Instrumentality Properly Guarded for Jury.*— The purpose of the Virginia safety appliance act (Code of 1924, section 1830), requiring the machinery specified to be properly guarded, is that the master shall place such safeguards around it as are practical and necessary for the protection of his employees from all dangers which might be reasonably anticipated from its operation. Violation of the statute on the part of the master constitutes negligence. The question of whether the instrumentality is or is not properly guarded is a question of fact for the determination of the jury.

5. MASTER AND SERVANT—*Negligence—Safety Appliance Act—Ordinary Usage of Business—Case at Bar.*— In the instant case plaintiff, an employee in defendant's car-repair shops, lost his hand when engaged in the operation of "free cutting" with a rip-saw. The question at issue was whether the saw was properly guarded as required by the safety appliance act (Code of 1924, section 1830). Defendant introduced evidence to show that it employed the same means to guard the saw in question as was employed in other mills and shops. But there was a diversity of opinion among the defendant's own witnesses as to the extent to which rip-saws were guarded in the various shops in which they had worked.

*Held:* That in this state of the evidence the question of whether any usage existed in regard to guarding rip-saws used for "free cutting," and if so, what the common usage was, was for the jury to determine under the instructions of the court.

6. MASTER AND SERVANT—*Negligence—Safety Appliance Act—Ordinary Usage of Business.*—Evidence of common practice and usage in methods, machinery and appliances is admissible for the purpose of showing whether an employer has exercised reasonable care, and, if nothing appears to the contrary, is accepted as the test of negligence on the part of the employer. But when a breach of a statutory duty which of itself constitutes negligence has been shown, the mere fact that the employer has followed the practice of others engaged in the same business does not exempt him from liability for the consequences of such breach. Proof of common usage, under such circumstances, would only be proof of common violation of the statute and negligence on the part of all.

7. MASTER AND SERVANT—*Negligence—Safety Appliance Act—Ordinary Usage of Business.—*A violation of the Virginia safety appliance act, section 1830, Code of 1924, constitutes negligence and in an action by the employee against the employer the sole question is whether, as a matter of fact, the requirements of the statute have been complied with, and the rule as to the ordinary usage of the business being the test of negligence has no application. Whenever the law condemns an act as negligence, evidence of custom or usage as to such act is not admissible to show that the act was not negligent.

8. MASTER AND SERVANT—*Negligence—Safety Appliance Act—Ordinary Usage of Business—Case at Bar.—* In an action by an employee in defendant's car-repair shops for the loss of his arm while operating a rip-saw in "free cutting," if it were conceded that the defendant's evidence established the existence of a general usage as to the method of guarding rip-saws used in "free cutting," and it was shown that the saw in question was guarded according to such usage, this would not excuse the defendant for its failure to comply with the statute, section 1830 of the Code of 1924, requiring the employer to properly guard the saw.

9. MASTER AND SERVANT—*Negligence—Safety Appliance Act—Assumption of Risk—Case at Bar.—* In the instant case, an action by an employee in defendant's car-repair shops for the loss of his arm while operating a rip-saw, defendant contended that plaintiff assumed the risk of operating the saw with the guard that had been provided for it.  .

*Held:* That assumption of risk could not be set up by an employer who has violated his statutory duty under the safety appliance act.

10. MASTER AND SERVANT—*Negligence—Safety Appliance Act—Protection of Employees—Assumption of Risk.—* Whether a statute for the protection of employees prescribes the particular method or appliance for carrying out its purpose or leaves the adoption of the method or appliance to the employer is immaterial on the question of assumption of risk by the employee. The requirements are equally mandatory. The distinction relates only to the fact necessary to be proved in each particular case in order to show a violation of duty on the part of defendant.

11. MASTER AND SERVANT—*Negligence—Safety Appliance Act—Construction Declaratory of Common Law—Assumption of Risk.—* If the Virginia safety appliance act, section 1830 of the Code of 1924, is only declaratory of the common law rule on the subject, and for that reason the common law defense of assumption of risk should be allowed for *its* violation, it is self-evident that the statute would be without purpose or effect, and an entirely useless piece of legislation. Such a construction of the statute would be contrary to good reason and

the manifest intent of the legislature as recognized by the great weight of authority.

Error to a judgment of the Circuit Court of Chester-field county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Robert W. Strange* and *Mann & Townsend*, for the plaintiff in error.

*D. M. White, Geo. B. White* and *M. P. Bonifant*, for the defendant in error.

CHINN, J., delivered the opinion of the court.

A. D. Bell, plaintiff in the court below, was employed as "material man" at the "Clopton" car-repair shops of the Atlantic Coast Line Railroad Company (herein-after referred to as defendant), and while so employed and engaged in the performance of his duties, one of his hands was cut off by a rip-saw installed in said shops, which he was at the time operating.

He subsequently brought this suit and was awarded $7,500.00 damages by the jury, for which amount the court entered judgment, and the defendant company is now here complaining of that judgment.

Plaintiff's account of the accident, as related in his testimony at the trial, is as follows:

"On November 8, 1923, as I was passing along by the saw table which this saw was under, I seen Mr. Hughes standing in front of this rip-saw with a board in his hand. I walked up to him. I said: 'Mr. Hughes,

what do you want?' He says: 'I want this board rip-
ped.' I said: 'Mr. Hughes, pull the saw in gear and get
behind the table and catch the board as it comes
through.' I picked up the board and started to rip it,
and Mr. Hughes caught the end of the board as it came
through the end of the saw. When I got near the end,
about two or three feet (I disremember now, I would
not be positive how many feet it was, but it was near
the end), the board began to buck up and down on the
saw more than I had ever seen it on any saw. I stepped
one side, holding my hand on the board, and tried to
hold it down, and, as I made a step forward, I stepped
into some blocks and it threw me over the saw. Mean-
time I tried to keep out of the saw and I got my hand
caught in the saw and lost it. You see what I have
left of it."

Plaintiff further testified that when the board began
to buck, he stepped forward so that he could hold it
down on the saw table, and thereby keep it from break-
ing loose and flying back and striking him, as it was
liable to do.

The negligence charged against the defendant, and
chiefly relied on, is that it failed to properly guard the
saw by which plaintiff was injured, as required by sec-
tion 1830 of the Code known as the safety appliance
act. This statute, so far as applicable, provides:

"* * * All vats, elevators, saws, planers, cogs,
gearing, belting, shafting, set screws, shapers, corner
machines, shall be properly guarded. No person shall
remove or make ineffective any safeguard around or
attached to machinery, vats or elevators while the
same are in use unless for the purpose of immediately
making repairs thereto, and all such safeguards so
removed shall be promptly replaced. If a machine or
any part is in a dangerous condition, or is not properly

guarded, notice thereof shall be given to the manager or owner in charge of such operation, and unless such machinery is repaired or made safe within thirty days after such notice, the use thereof may be prohibited by the Commissioner of Labor and a notice to that effect shall be attached thereto.   *   *'' Penalties are provided for violation of the statute.

It is contended by counsel for defendant that the evidence is insufficient to show that the saw in question was not "properly guarded" within the meaning of the statute; and that is the first question presented by the petition for writ of error for our consideration.

Considering the evidence as upon a demurrer, it shows that at the time of his injury plaintiff was using the saw to rip a board eighteen feet long, three and one-quarter inches wide, and seven-eighths of an inch thick, by the operation of what is called "free cutting," or "cutting to the line." This operation, as partly described by the plaintiff, consists of pushing the board against the saw in order to rip it lengthwise to a line marked on the board, without any guide or device to control it except the operator's hand. · This particular saw was revolved by a shaft running under the table to which it was attached, and protruded above the table five and one-half inches. The table was about ten inches wide, thereby extending about five inches on each side of the saw. The guard provided by the defendant consisted of a steel frame covered with a strong wire netting, which could be raised or lowered by means of a bracket. When the appliance was lowered as far as it would come, it stood about one-half an inch above the saw, and six inches above the saw table. The bottom of the guard was not curved, but extended straight over the top of the saw for about two inches beyond each edge of the same.

[1, 2] It is argued that if the guard came down over the saw low enough to make it impossible for the operator's hands and fingers to get under it, it would prevent the operator from seeing the saw and the line and thereby render the saw useless for "free cutting," and the saw was, therefore, guarded as far as practicable for the purpose for which it was intended to be used. It is true, as held by quite a number of decisions dealing with similar statutes, that the master is not expected to guard the instrumentalities in such a way as to materially interfere with their practical use and efficiency, but, in view of the evidence produced in this case, it seems clear that the guard in question, even if proper in other respects, could have been constructed to come down appreciably lower over the saw without in any manner interfering with the operator in "cutting to the line," or the practical use of the saw for that purpose. As to exactly how low a guard could come down over the saw without interfering with "free cutting" the evidence is in conflict. The plaintiff, as an experienced operator, testified that a space of half an inch between the guard and the board being ripped would be sufficient to enable one to see both the saw and the line for "free cutting;" and a model for such a guard was exhibited during the argument which tends to substantiate his statement. But that is not the question here. The question is whether the appliance provided by the defendant adequately protected plaintiff from injury by the saw as far as practicable, considering the purpose for which he was using it; and this is a question of fact for the jury.

[3] There is abundant evidence going to show that after the guard in question was lowered as far as it would come, it left the saw unguarded for a space of five inches or more between the guard and the board

then being ripped; that this was an unnecessary amount of space for "free cutting;" and that it was practicable to have provided a guard for "free cutting" which would have materially lessened, if not eliminated, the danger to which plaintiff was exposed and which caused the loss of his hand.

We think the evidence is amply sufficient to warrant the jury in finding, as it did, that the rip-saw was not properly guarded as required by the statute.

[4] The statute under consideration has been twice considered by the United States Circuit Court of Appeals, and there are numerous decisions construing the statutes existing in other States, containing similar or identical provisions. In effect the decisions hold that it is the purpose of the statute requiring the machinery specified to be properly guarded; that the master shall place such safeguards around it as are practical and necessary for the protection of his employees from all dangers which might be reasonably anticipated from its operation; that violation of the statute on the part of the master constitutes negligence; and that the question of whether the instrumentality is or is not properly guarded is a question of fact for the determination of the jury.

In the case of *E. I. du Pont de Nemours & Co.* v. *Briscoe*, 254 Fed. 962, in which the United States Circuit Court of Appeals had the Virginia statute before it for consideration, the court said:

"The defendant argues it would have done no good to guard the vat, because it says the guards would have been around the outside of the tank, and it was not there that the plaintiff fell, and that it was impracticable to guard the drainage platform upon which plaintiff slipped, or the stringers which he habitually traversed, and upon which he occasionally worked.

Such an argument misconceives the whole purpose of the statute. The enactment * * * declared: 'All vats * * * shall be properly guarded.' That does not mean necessarily that the guards shall be on the outside of the vat. They should be there if guards at that place are needed to attain the purpose of the legislature, namely, the protection of the workmen; but the place and manner of the guarding must be such as will at least reasonably safeguard employees while engaged in their habitual work and in their necessary passing to and from it."

In the case of *Foster* v. *E. I. du Pont de Nemours & Co.*, 289 Fed. 65, where the United States Circuit Court of Appeals again had section 1830 of the Virginia Code before it for consideration, the court said:

"The statute should have a construction broad enough to meet the legislative purpose in view. Obviously one of the chief dangers in the use of vats or tubs frequently filled with hot water or acid and then emptied from the bottom through a hole into a tub or trough is that the pressure from above may force the water out with such violence as to strike and injure employees working around the vats. This is a danger immediately incident to the operation of the vat, and is as clearly within the provision of the statute as guarding the vat by cover. *Properly guarded means effectively guarded in view of any danger to be anticipated in the operation of the vat.*" (Italics supplied.)

In *American Ice Co.* v. *Porreca* (C. C. A.), 213 Fed. 185, where the Pennsylvania statute requiring that "all * * * * saws * * * and machinery of every description shall be properly guarded" was under consideration, the court said:

"That failure on the part of the defendant to comply with the requirements of that statute would constitute negligence is clear. * * *

"Nor is this humane and danger eliminating statute to be grudgingly construed. Its obvious purpose was to properly guard machinery of every description so as to prevent *preventable* harm. The word 'guard' in its derivative sense means to be on the watch, and in its common use to protect from danger."

And in *Miller* v. *Sash & Door Co.*, 153 Iowa 735, 134 N. W. 411, where another statute similar to this was being construed, the Iowa court said:

"The design of the statute is that something shall be placed near to or over the machine or parts thereof specified in such a manner, and of such material, as to protect employees coming in proximity with or using it from being injured by coming in contact therewith. As said in *Kirchoff* v. *Creamery Co.*, 148 Iowa 508 [123 N. W. 201]: 'What such guard shall be is not specified, save in exacting that it shall be proper. According to the lexicographers, "proper" means "fit, suitable, appropriate:" and to be guarded "properly" is to be so covered as to reasonably accomplish the design of guarding.' * * * * If not reasonably suitable and calculated for this purpose, the cover is not proper, and the proprietor, in omitting to obey the mandate of the statute, is guilty of negligence. * * *."

In the Missouri case of *Simmon* v. *Brass Manufacturing Co.*, 298 Mo. page 78, 250 S. W. 76, in referring to the statute of that State, the court said:

"To 'guard' such a machine is to provide it with a *guard*, that is, any device, fixture or attachment designed to protect or secure against injury from it. (*Bessler* v. *Laughlin*, 168 Ind. 38 [79 N. E. 1033].) * * * The machine could not have been housed, covered, or fenced and at the same time operated, but it could have been equipped with a safety device which would have secured the operator from injury and that

would have been to 'guard' it within the meaning of the statute."

In *Christianson* v. *Compo-Board Co.*, 83 Minn. page 25, 85 N. W. 826, 85 Am. St. Rep. 440, where the statute provides that "all saws," etc., shall be, "as far as practicable, properly guarded, fenced or otherwise protected," and the plaintiff was injured by a circular saw, the court said:

"The purpose of this statute is obvious. It was intended to protect from personal injury the workmen or employees in any shop, mill, or factory by reason of dangerous machinery therein, and it must be so construed as to give effect to such wise and humane purpose. Therefore, the statute must be and is construed as requiring that such machinery must be so guarded, if practicable, as to protect such workmen, * * * from liability to injury by it."

See also to the same effect, and holding that violation of the requirements of the statute constitutes negligence, and is a question for the jury: *Jones* v. *American Caramel Co.*, 225 Pa. St. 644, 74 Atl. 613; *Crucible Steel Forge Co.* v. *Moir*, 219 Fed. 151, 135 C. C. A. 49; *Variety Iron & Steel Works* v. *Peak*, 89 Ohio St. 297, 106 N. E. 24; *Davidson* v. *Flour City Ornamental Iron Works*, 107 Minn. 17, 119 N. W. 483, 28 L. R. A. (N. S.) 332, 131 Am. St. Rep. 433; *Koutsky* v. *Forster-Whitman Lumber Company*, 146 Wis. 425, 131 N. W. 1001; *Austin* v. *Shoe Co.*, 176 Mo. App. 546, 158 S. W. 709.

[5-7] It is urged that the verdict should have been set aside on the ground that the defendant employed the same means to guard the saw in question as is employed in other mills and shops where such saws are used for "free cutting;" and the rule that "the unbending test of negligence in methods, machinery and

appliances is the ordinary usage of the business," is invoked in support of the contention.

In the case of *Jeffress* v. *Virginia Railway and Power Company*, 127 Va. 694, 104 S. E. 393, Judge Kelly, in the course of an elaborate and learned discussion of the above rule and the authorities on the subject, said:

"The general usage of the business in a given situation is admissible as evidence of what is reasonable and proper to be done in that situation, from which along with other (if there be other) pertinent facts and circumstances of the case, the jury are to determine the question of negligence. *If there be no conflict of evidence as to the existence of the general usage, and nothing in the evidence tending to show, as to employees, that the usage is not reasonably safe or adequate for its purpose and occasion,* * * * * * then the usage itself is conclusive evidence of the exercise of ordinary care, and no verdict to the contrary should be upheld." (Italics supplied.)

Among other authorities the opinion in the same case quotes Sherman and Redfield on Negligence (6th ed.) section 12-a, as follows:

"The custom of others engaged in the same pursuit, though generally admissible as evidence by either party as tending to show negligence, or the contrary, is not conclusive. What usually is done may be *evidence* of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not."

Aside from plaintiff's evidence on the subject, there was a diversity of opinion among defendant's own witnesses as to the extent to which rip-saws were guarded in the various shops in which they had worked, and as to the character of the device provided for that purpose; one of said witnesses testifying that in three mills

with which he was familiar, the saws were not guarded at all. In this state of the evidence the question of whether any usage existed in regard to guarding rip-saws used for "free cutting," and, if so, what the common usage is, was a question for the jury to determine under the instructions of the court. *Hansborough* v. *Neal*, 94 Va. 722, 27 S. E. 593; *Craddock Manufacturing Co.* v. *Faison*, 138 Va. 665, 123 S. E. 535, 39 A. L. R. 1309; *Jeffress* v. *Virginia Railway and Power Company*, 127 Va. 694, 104 S. E. 393. While, however, as above seen, evidence of common practice and usage in methods, machinery and appliances is admissible for the purpose of showing whether the employer has exercised reasonable care, and, if nothing appears to the contrary, is accepted as the test of negligence on the part of the employer, the decisions generally hold that when a breach of a statutory duty which of itself constitutes negligence has been shown, the mere fact that the employer has followed the practice of others engaged in the same business does not exempt him from liability for the consequences of such breach. Proof of common usage, under such circumstances, would only be proof of common violation of the statute and negligence on the part of all. In other words, when the violation of a statute such as this constitutes negligence, the sole question is whether, as a matter of fact, the requirements of the statute have or have not been complied with, and the so-called "unbending test" rule has no application. To quote the language of the court in *Austin* v. *Shoe Co., supra*: "To adopt any such rule would be to allow the custom of those engaged in the business to nullify the law and strike down all of its safeguards."

In *Schaffer* v. *Nat. Supply Co.*, 80 W. Va. 111, 92 S. E. 580, the court quotes 29 Am. & Eng. Encyc. of Law (2nd ed.), page 418, as follows:

"As a general rule it may be said that whenever the *law condemns an act as negligent,* evidence of custom or usage to do such act is not admissible to show that the act was not negligent.   *   *   *   But when the question is whether or not there was want of *due care* in any particular case, evidence of usage is admissible to show what constitutes due care as applied to that particular case."   (Italics supplied.)

In *Jones* v. *American Caramel Co., supra,* the court said:

"The legislative mandate is that machinery of every description shall be properly guarded, and customary disregard of this is but customary negligence, rendering every one guilty of it responsible for the consequences resulting directly and solely from it.   Ordinary usage which is in disregard of a statutory duty cannot be a test of negligence."

In *Callopy* v. *Atwood,* 105 Minn. 80, 117 N. W. 238, 18 L. R. A. (N. S.) 593, where the statute required the guarding of dangerous machinery where practicable, the court said:

"That saws of this type had never been provided with guards by appellant and other mill men was no excuse for not complying with the statute.   It applies to all cases whether guards had been used or not, and there are only two questions to be taken into consideration in determining whether the statute has application to a particular case, viz.:  Is the machine dangerous and located in an exposed position? and, Is it practicable to guard it?"

Among other cases holding to the same effect are the following: *Kirchoff* v. *Hohusbehn Creamery Supply Co.,* 148 Iowa 508, 123 N. W. 210; *Reddington* v. *Blue & Raferty,* 168 Iowa 34, 149 N. W. 933; *Hockman* v. *Sifers Candy Co.,* 104 Kan. 94, 178 Pac. 254; *Camen-*

*zind* v. *Freeland Furniture Co.*, 89 Ore. 158, 174 Pac. 139; *Barclay* v. *Puget Sound Lumber Co.*, 48 Wash. 241, 93 Pac. 430, 16 L. R. A. (N. S.) 140.

In referring to the safety appliance statutes in 18 R. C. L. at page 592, the author of the text says:

"Judicial policy opposed such enactments in some instances, and the statutes were virtually repealed by the decisions, but the more recent rulings recognize a non-performance of the statutory duty as negligence on the part of the employer. * * * A failure to comply with the statute is not excused by the fact that the offending appliance is not manufactured with a guard, or that guards are not supplied by any other employers."

[8] If, however, it be conceded that the defendant's evidence established the existence of a general usage as to the methods of guarding rip-saws used in "free cutting," and it had been shown that the saw in question was guarded according to such usage, we do not think that fact would excuse the defendant for its failure to comply with the statute, as the jury found that it had done.

[9] It is also contended that the verdict should have been set aside because the plaintiff assumed the risk of operating the saw with the guard that had been provided for it. Upon the question of whether an employee assumes the risk of his employer's neglect of duty when such duty is imposed by statute the decisions, generally speaking, are in serious conflict, not only as between the courts of the several States, but in some instances the decisions of the same State are apparently inharmonious. The history of judicial opinion on the subject, and the present prevailing doctrine is, however, well summed up in 18 R. C. L. pages 679-80, as follows:

"Observing that common law doctrines were not

economically sound as applied to modern conditions
of labor, the legislatures of many States during the last
decades of the nineteenth century passed numerous
statutes looking to the better protection of persons
engaged in the service of factories and railroads.   The
policy of these laws was at first doubted by the courts,
and a conflict of opinion raged on the question whether
the employer might defend an action for injuries
resulting from his non-compliance therewith.    The
prevailing view among the earlier authorities was that
the defenses both of contributory negligence and
assumption of risk were open to the employer, or, as
it often has been expressed, 'the statutes do not abolish
the common law principle of assumption of risk.'   For
example, according to the view, a factory act requiring
gearing, shafting, etc., to be guarded does not abolish
the defense of assumption of risk in case an injury
results from unguarded machinery.   *   *   *   *   Such,
however, is not the trend of modern authority.   A very
decided majority of the later cases declare that assump-
tion of risk may not be set up by an employer who has
violated his statutory duty.   'If the employer may
avail himself of the defense that the employee agreed
in advance that the statute should be disregarded, the
court would be measuring the rights of the persons
whom the law makers intended to protect by the com-
mon law standard of the reasonably prudent person,
and not by the definite standard set up by the legisla-
ture.    This would be practically a judicial repeal of
the act.'    *    *    *.''

But whatever may be the conflict of opinion else-
where, we consider the question to be now settled in
Virginia in the adoption of the modern doctrine referred
to by the cases of *Carter Coal Co.* v. *Bates*, 127 Va.
601, 105 S. E. 76, and *Clinchfield Coal Corporation* v.
*Hawkins*, 130 Va. 698, 108 S. E. 704.

The first named case arose under the statute (now section 1864 of the Code) requiring the mine foreman, where hauling is done by machinery of any kind, to "provide for the carrying of a conspicuous light on the front * * * of every trip or train of cars when in motion." The only provision made by the coal company to comply with this requirement of the statute was that its mine foreman instructed the brakemen on the cars who wore carbide lamps in their caps to ride on the end of each trip of cars. The plaintiff's hand was injured in a slight collision between two cars, and the act of negligence relied on was the failure of the company to provide a "conspicuous light" as required by the statute. The plaintiff was an experienced miner and had full knowledge of this breach of duty, and one of the defenses was assumption of risk.

Judge Sims, who delivered the opinion of the court, after stating that the question was an open one in Virginia, said:

"The same statute and the precise question which we have under consideration was before the United States Circuit Court of Appeals in the case of *Pocahontas Consolidated Collieries* v. *Johnson,* 244 Fed. 368, 156 C. C. A. 654.

"In that case Judge Knapp delivered an able and forceful dissenting opinion; but the majority opinion, delivered by Judge Woods, equally able and more convincing to our minds, held that the doctrine of assumption of risk does not apply to the breach of such statutory duty as that in question. We think that is a sound and correct conclusion both upon principle and upon authority. * * *

"When we consider the subject on principle, we see that if the conclusion just stated be not correct, the statute may be nullified and set at naught by the systematic and flagrant violation of it."

[10] It is argued by learned counsel for the defendant that the decision in *Carter Coal Co.* v. *Bates* is not a controlling precedent for the instant case for the reason that the statute there under consideration prescribed a definite duty in prescribing a "conspicuous light," etc., with which the coal company made no effort to comply, whereas in the case now before us "no definite duty was prescribed by the statute which was in general terms and nothing more than a re-enactment of the common law rule that 'saws should be properly guarded,' or in other words that the servant should have a reasonably safe place to work," which duty the master made an attempt to perform.

We are unable to see any real force in this argument. Though applying to different classes of employees, both statutes were undoubtedly enacted for one and the same purpose; that is, the protection of employees, and whether they prescribe the particular method or appliance for carrying out this purpose or leave their adoption to the employer, seems to us immaterial. The requirements of the statutes under consideration are equally mandatory; the only distinction between them being that in the instant case the saw was required to be "properly guarded," and in the *Bates Case* that a "conspicuous light be carried on the front of each trip or train of cars." This distinction relates only to the *fact* necessary to be proved in each particular case in order to show a violation of duty, on the part of the defendant, considering the purpose of the statutes, and upon principle, we see no reason for making the distinction contended for between the two cases in the application of the doctrine of assumption of risk; which is in accordance with the great weight of the more recent decision.

[11] If, as is also contended, the statute now under

consideration is only declaratory of the common law rule on the subject, and for that reason the common law defense of assumption of risk should be allowed for its violation, it is self-evident that the statute would be without purpose or effect, and an entirely useless piece of legislation. Such a construction of the statute would be contrary to good reason and the manifest intent of the legislature as recognized by the great weight of authority.

We think it may also be said that all of the above questions were, in effect, set at rest by the case of *Clinchfield Coal Corporation* v. *Hawkins, supra.* The statute involved in that case requires all coal mining companies to instruct every employee, whether experienced or not, as to the unusual or extraordinary dangers incident to the work known to or which would be reasonably foreseen by the mine foreman, and also to see that every inexperienced employee works with a man of experience until he has had an opportunity to become acquainted with the ordinary dangers incident to the work. The plaintiff was an inexperienced miner and was placed under the direction of a man of experience as required by the statute, but was not instructed by him as to the dangers of the work, and was injured by a fall of "draw-slate." One of the defenses was assumption of risk. It was held by the court that although the duty of instructing employees as to unusual and extraordinary dangers, as prescribed by the statute, was merely declaratory of the common law, and the requirement that the employer should see that an inexperienced miner should work with a man of experience was intended to provide a practical method of giving inexperienced miners the instructions which, at common law, it was the duty of the employer to provide, the employer violated its statutory duty in

failing to properly instruct the plaintiff, and said: "The doctrine of assumed risk cannot avail the defendant.    It does not apply as to breaches of *statutory duties* of the master;" citing *Carter Coal Co.* v. *Bates, supra.*

In view of the Virginia doctrine on the subject as declared in the above cases, we deem it unnecessary to cite further authority, although many influential decisions to the same effect from other States might be referred to.

After careful consideration of all the questions involved, we are of the opinion that the judgment of the lower court should be affirmed.

*Affirmed.*