Present:  All the Justices

KANEY F. O'NEILL

v.  Record No. 031824     OPINION BY JUSTICE ELIZABETH B. LACY
                                   April 23, 2004
WINDSHIRE-COPELAND
ASSOCIATES, L.P., ET AL.

        UPON A QUESTION OF LAW CERTIFIED BY THE UNITED STATES
              COURT OF APPEALS FOR THE FOURTH CIRCUIT

     On July 30, 2003, the United States Court of Appeals for

the Fourth Circuit entered an order of certification

requesting that we exercise our certification jurisdiction,

Va. Const. art. VI, § 1, Rule 5:42, and answer the following

question:

        If the defendant-owner of an apartment building
        is negligent per se because the protective
        railing on its apartment balcony does not
        comply with the height requirements of a
        municipal building code, and if that negligence
        is a proximate cause of the plaintiff's fall
        from the balcony and her resulting injuries, is
        the plaintiff's contributory negligence
        available to the defendant as a complete
        defense?

     Resolving the issue will determine the outcome of the

proceeding in the Court of Appeals.  We accepted the certified

question by order entered October 28, 2003.  For the reasons

stated below, we answer the certified question in the

affirmative.

     The order of certification from the Court of Appeals sets

forth the following facts.  Kaney F. O'Neill became a

quadriplegic when she fell backward over a second-story balcony railing at an apartment complex in Newport News, Virginia, on September 15, 1999.  When the apartment was built in 1963, the Newport News Building Code required such balcony railings to be forty-eight (48) inches high.  See Code of City of Newport News § 10-3 (1962) (incorporating the National Building Code); Nat'l Bldg. Code § 605.4 (1955).  The balcony railing at issue here, however, was only thirty-two (32) inches high.[1]

O'Neill filed suit in the United States District Court for the Eastern District of Virginia, asserting that the owner of the apartment complex, Windshire-Copeland Associates, L.P.; its general partner, Robert Copeland; and the management company for the apartment complex, Hercules Real Estate Services, Inc., (collectively "Windshire") were negligent because the balcony's height did not comply with the requirements of the Newport News Building Code at the time the apartment complex was built and that such negligence was a proximate cause of her injuries.  At trial, testimony was admitted showing that O'Neill was familiar with the balcony and that she had consumed alcohol prior to the accident.

---

[1] Virginia adopted a statewide building code in 1973 that requires balcony railings to be at least forty-two (42) inches high.

At the close of the evidence, the trial court held Windshire negligent per se because its balcony violated the height requirement of the Newport News Building Code. The trial court also held that Windshire's negligence did not bar its defense of contributory negligence and, accordingly, submitted that issue to the jury. The jury found O'Neill contributorily negligent. Based on that finding, the trial court entered judgment in favor of Windshire, and O'Neill appealed that judgment to the United States Court of Appeals for the Fourth Circuit.

## DISCUSSION

The discussion by the Court of Appeals, in its certification order, and the arguments the parties advanced focused primarily on whether Virginia has adopted § 483 of the Restatement (Second) of Torts (1965). That section provides that, when a defendant's negligence consists of the violation of a statute, a plaintiff's contributory negligence bars his recovery for injuries caused by the negligence of the defendant "unless the effect of the statute is to place the entire responsibility for such harm as has occurred upon the defendant." Comment (c) to § 483 explains that a statute places the entire responsibility for harm on the defendant "where it is enacted in order to protect a certain class of persons against their own inability to protect themselves."

3

Restatement (Second) of Torts § 483, cmt. c, at p. 539 (1965). Comment (d) goes on to state that even though "those for whose benefit the statute is enacted may be expected to be, and are in fact, fully able to protect themselves," the statute may nevertheless relieve such persons from doing so and place on the defendant the entire responsibility for avoiding the harm.

O'Neill maintains that the concept embodied in § 483 is one "firmly entrenched in the common law" and "embraced for nearly a century by this Court." Applying that concept here, O'Neill argues that the building code is one of those statutes that places on the defendant the responsibility for injury resulting from a violation of its provisions and, thus, O'Neill's negligence should not defeat her recovery.

As O'Neill acknowledges, the cases upon which she primarily relies for the proposition that Virginia has adopted the concepts embodied in § 483 of the Restatement, Atlantic Coast Line R. Co. v. Bell, 149 Va. 720, 141 S.E. 838 (1928), Clinchfield Coal Corp. v. Hawkins, 130 Va. 698, 108 S.E. 704 (1921), and Carter Coal Co. v. Bates, 127 Va. 586, 105 S.E. 76 (1920), addressed whether a defendant could plead the assumption of the risk defense when the defendant's violation of a statutory requirement was a proximate cause of the

4

plaintiff's injury.[2]  The theory of the defendants advanced in those cases was that the plaintiffs had known that the defendants had not complied with the statutory requirement and, therefore, the plaintiffs had assumed the risk of harm resulting from such lack of compliance.

The seminal case in this Commonwealth rejecting an attempt by a defendant to raise the assumption of the risk defense under these circumstances involved a coal company's failure to provide for a "conspicuous light" on the front and rear of coal hauling machinery as required by statute.  Carter Coal, 127 Va. at 598-99, 105 S.E. at 80.  The Court's decision in that case was based on the principle that, if the mining-safety legislation at issue had not abrogated this common law defense, the "systematic violation" of the statute through the purported risk-assumption by the plaintiff would defeat the statute's purpose.  Id. at 601-02, 105 S.E. at 81.  As we later stated in Atlantic Coastline:

_____

[2] O'Neill also relies upon Gallagher v. Stathis, 186 Va. 444, 43 S.E.2d 33 (1947), for her position that Virginia has recognized and adopted § 483.  In Gallagher, the trial court refused a jury instruction that the plaintiffs were contributorily negligent because they agreed to live in a house with only one staircase in violation of the building code.  This Court affirmed the trial court's action because there was no evidence to support the granting of an instruction on the theory of contributory negligence, id. at 451, 44 S.E.2d at 37, and any implication to be drawn from the citation to foreign authority on the issue of the availability

5

> [I]f the employer may avail himself of the
> defense that the employee agreed in advance that
> the statute should be disregarded, the court
> would be measuring the rights of the persons whom
> the law makers intended to protect by the common
> law standard of the reasonably prudent person,
> and not by the definite standard set up by the
> legislature.  This would be practically a
> judicial repeal of the act.

149 Va. at 735, 141 S.E. at 842, citing 18 R.C.L. § 169 at 680-81 (1917) (quoting D.H. Davis Coal Co. v. Polland, 62 N.E. 492, 496 (Ind. 1902)).

O'Neill argues that because assumption of the risk and contributory negligence are "doctrinally related" and " 'often overlap,' " the rationale precluding the defense of assumption of the risk in these cases "applies with equal force to the defense of contributory negligence."  However, the rationale we utilized in Bell and its predecessors for excluding assumption of the risk cannot extend to the defense of contributory negligence.

The difference between assumption of the risk and contributory negligence as they relate to a defendant's negligence per se stemming from a statutory violation was explained in Pocahontas Consolidated Collieries Co. v. Johnson, 244 F. 368 (4th Cir. 1917), the case upon which

---

of contributory fault as a defense was therefore, at most, dicta.

6

Carter Coal relied in rejecting the defense of assumption of the risk:

> Assumption of risk and contributory negligence stand in a different legal relation to the violation of a . . . statute. Assumption of risk imports no delict on the part of an employe[e] . . . . Contributory negligence . . . is a delict or neglect of duty by the employe[e], and hence he cannot recover for the delict of the employer, . . . if his own delict has contributed to his injury as a proximate cause.

Id. at 372.

This fundamental difference between the effect of the assumption of the risk and contributory negligence defenses negates the proposition that our jurisprudence precluding the use of assumption of the risk defense also precludes the use of the contributory negligence defense that § 483 of the Restatement (Second) of Torts provides.

Nevertheless, we recognize that there are circumstances in which a legislative body may determine that, because of the nature of the regulation or the class of persons the regulation was intended to protect, the defendant should bear the entire responsibility for harm that the failure to comply with the regulation causes. For example, the General Assembly has specifically made such a determination in Code § 8.01-58 by providing that contributory negligence "shall not bar a recovery" in actions brought by employees against a common carrier where death resulted from the common carrier's

7

violation of "any statute enacted for the safety of employees."  See also Code §§ 46.2-932.1, -934, 56-416, and former Code § 56-417.[3]

We need not decide here whether application of that principle can be implied in statutes that do not specifically state that the defense is not available.  In this case, nothing in the Newport News Building Code indicates that the purpose of the code was to place the entire responsibility for injuries stemming from a code violation on the defendant building owner.  Unlike Code § 8.01-58, nothing in the Newport News Building Code allows recovery regardless of a plaintiff's negligence.  The code protects no specific class; it is the public in general that benefits from its provisions.  Indeed, a person who never entered a building but only stood outside could be injured as a result of a building code violation.  Nor would allowing the defense of contributory negligence in this case defeat the building code's purpose of height requirements and "'work a judicial repeal of the Act'" as

_____

[3] Violations of the child labor laws are also not subject to the defense of contributory negligence because children under the age of 14 are presumed incapable of contributory negligence, Virginia Electric and Power Co. v. Dungee, 258 Va. 235, 246-47, 520 S.E.2d 164, 171 (1999), and, regardless of any violation of such laws, child employees are subject to the Workers' Compensation Act, Code § 65.2-100, et seq., which does not allow the defenses of assumption of the risk or contributory negligence.  Roller v. Basic Constr. Co., 238 Va.

O'Neill asserts.  Only if a combination of a defendant's code violation and a plaintiff's independent negligence caused the plaintiff's injury would the plaintiff be unable to recover. Under these circumstances, allowing a contributory negligence defense neither compromises nor subverts the policy advancing compliance with the building code.

For these reasons, we conclude that § 483 of the Restatement (Second) has not been adopted in this state and hold that the defense of contributory negligence is available when the defendant's violation of a municipal building code is negligence per se and a proximate cause of the plaintiff's injuries.

Certified question answered in the affirmative.

---

321, 327, 384 S.E.2d 323, 325 (1989); Rasnick v. The Pittston Co., 237 Va. 658, 660, 379 S.E.2d 353, 354 (1989).